541 A.2d 800

Grand Oak Nursing Home, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Grand Oak Nursing Home, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Upper Bucks Nursing and Convalescent Centers, Inc., et al., Petitioners *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued September 12, 1985, before Judges CRAIG, MACPHAIL and BLATT, sitting as a panel of three.

*Jeffrey B. Schwartz,* with him, *Steven E. Bernstein, Steven E. Schwartz, Berriman & Schwartz,* for petitioner.

*Bruce G. Baron,* with him, *William D. Lenahan,* Assistant Counsel, *Jeffrey Gonick,* Assistant Counsel, *John Kane,* Acting Chief Counsel, for respondent.

Memorandum Opinion by Judge Blatt, August 11, 1986:

In these consolidated appeals Grand Oak Nursing Home, Inc., (petitioner) challenges an order of the Executive Deputy Secretary (Secretary) of the Department of Public Welfare (Department) which disallowed certain reimbursable costs in the calculation of Grand Oak's per diem reimbursement rate.[1]

Grand Oak was purchased in 1980 and, pursuant to Medicaid Assistance regulations, was determined to be eligible for reimbursement for depreciation on its captial assets and for interest attributable to finance charges incurred in financing its $2,000,000 purchase price.[2] These allowances were factored into the calculation of the per diem rate at which reimbursement is made by the Department for the care of Medicaid patients. The depreciation taken by the previous owners totaled $636,833 and the facility's adjusted basis or "book value" was consequently reduced by that amount,

---

[1] The Department's decision with respect to Grand Oak's interim per diem reimbursement rate for the period between October 15, 1980 through June 30, 1981 provided the basis for the Department's subsequent determinations as to Grand Oak's final audit appeal for the period between October 15, 1980 and June 30, 1984 as well as for the resolution of certain issues presented in the combined audit appeals of the remaining petitioners (Upper Bucks Nursing and Convalescent Centers, Inc.; Lafayette Manor; Millville Health Center, Inc.; Greenleaf Nursing Home and Briarleaf Nursing Home). Because disposition of these appeals was controlled by the same common issue, these appeals were consolidated before this Court.

[2] Grand Oak had formerly been the Ponce de Leon Nursing Home, and because the acquisition was financed through the use of Industrial Development bonds, title will not pass to the current "owners" until the bonds are redeemed. In order to comply with the pertinent reimbursement regulations, however, the Department agreed to treat the acquisition as a purchase under which title had passed. *See* 55 Pa. Code §1181.260(b)-(d).

resulting in an adjusted basis of $1,363,167. The issue presented here is whether or not the pertinent regulations in effect at the time authorized the Secretary to limit the interest to be reimbursed to that attributable to the adjusted basis, and, therefore, to disallow reimbursement for the interest attributable to that portion of the purchase price which exceeded the adjusted basis.

The pertinent regulations in effect at the times relevant to this matter were set forth in the **Manual for Allowable Cost Reimbursement for Skilled Nursing and Intermediate Care Facilities** (Manual), which provides, in pertinent part:

**IV. Standards for general and selected costs.**

The Department shall determine provider's allowable costs in accordance with the following:

(a) The Department's Manual for Allowable Cost Reimbursement for Skilled Nursing and Intermediate Care Facilities and,

(b) The Medicare Provider Reimbursement Manual (HIM-15), except that where the Department's Manual and the HIM-15 differ, the Department's Manual shall govern.

\* \* \* \*

D. *Other Cost items.*

\* \* \* \*

9. *Depreciation allowance.*

Depreciation on capital assets . . . is an allowable cost subject to the following conditions:

\* \* \* \*

f. The cost basis for depreciable assets of a facility purchased as an ongoing operation shall be the lesser of the purchase price or the fair market value . . . and less any straight line depreciation by the prior owner.

\* \* \* \*

10. *Interest allowance.*

a. Necessary and proper interest on both current and capital indebtedness is a capital cost. . . .

b. Interest incurred on a loan made to satisfy a financial need of the facility will be recognized. . . .

c. Interest applying to mortgages on the property and plant . . . will be recognized. The total mortgages on which interest is allowed may not exceed the lesser of at least two independent appraisals of the mortgaged property. . . .

8 Pa.B. 2832-2838 (October 14, 1978) as amended by 10 Pa.B. 3107 (July 26, 1980).[3] The HIM-15 referred to above, pertinently provides:

INTEREST ON LOANS IN EXCESS OF ASSET VALUE, ACQUISITION AFTER JULY 1970

A. Where a loan is obtained to finance the purchase of a facility or a tangible asset that is acquired after July 1970, and the purchase price exceeds the . . . cost basis, . . . interest expense on that portion of the loan used to finance the excess is not considered reasonably related to patient care and is not allowable.

Medicare Provider Reimbursement Manual (HIM-15), §203.

The petitioner preliminarily contends that the Secretary was obliged to accept an administrative interpretation of the regulations which allowed reimbursement for the excess interest. This interpretation had been made by a hearing examiner whose decision the Secretary reversed in issuing the order here concerned. It argues that the Secretary's review of a hearing examiner's decision should be limited to considering whether or not there was substantial evidence to support the examiner's decision, and that the Secretary could not, without explanation, substitute his interpretation of the regulations in place of the examiner's. No

---

[3] The Manual was subsequently codified into title 55 of the Pennsylvania Code; in the process the excess interest limitation was included, and is now found at 55 Pa. Code §1181.260(g).

authority supports such an assertion, however, and we decline to impose such a limitation upon the Secretary. It is the agency head, or his or her designated representative, not the hearing examiner, who is authorized to interpret Department regulations. Section 403(b) of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. §403(b). *See also Westmoreland Manor v. Department of Public Welfare,* 91 Pa. Commonwealth Ct. 155, 496 A.2d 1282 (1985) (declining to accept proposition that the Secretary lacked the authority to reverse hearing officer's interpretation of grandfather clause) and *Northwestern Institute of Psychiatry v. Department of Public Welfare,* 99 Pa. Commonwealth Ct. 213, 513 A.2d 495 (1986) (provider appeals are conducted pursuant to 1 Pa. Code §§35.1-35.251, which limit hearing examiner's fact finding powers to proposals and recommendations).

The petitioner next contends that the Secretary's interpretation constitutes an arbitrary and capricious disregard of the evidence presented, asserting that Section IV-D-10-c of the Manual unambiguously limits the total of mortgages on which interest is allowed to the lesser of at least two appraisals of the mortgaged property and equipment. It argues, therefore, that there was no ambiguity as to the interest limitation intended to be applied and that no reference need have been made to the provisions of Section 203 in HIM-15.

We must observe, of course, that an agency's interpretation of its own regulations is entitled to great deference and is controlling unless it is clearly erroneous or inconsistent with the regulation itself or with the underlying legislative requirements. *Michael Manor, Inc. v. Department of Public Welfare,* 88 Pa. Commonwealth Ct. 583, 490 A.2d 957 (1985). Section IV clearly indicates that allowable costs should be determined using *both* the Manual as well as the HIM-15 *unless* there is a

conflict between the two. We discern no impropriety or inconsistency, therefore, in the Department's reading the more specific, restrictive interest limitations of the HIM-15 together with the general limitations set forth in Section IV-D-10-c of the Manual, which appears merely to set a "cap" on the total interest to which a facility may be entitled. Accordingly, we see no conflict between the two provisions, and the Manual's cap on allowable interest does not indicate that all costs within such an amount are necessarily allowable or that other limits may not be established. We further note that a number of other limits were imposed under Section IV-D of the Manual. Section IV-D-9-k, for example, precluded the allowance of excess interest related to bed costs above $22,000.[4]

The petitioner also contends that the Department's interpretation is inconsistent with the regulation, arguing that the substance of other sections of the HIM-15 had been adopted by the Department in formulating the Manual, while the provisions of Section 203 had not been so incorporated. We disagree, however, that the failure to include the gist of Section 203 with the other HIM-15 provisions found within the Manual's corresponding sections renders the Secretary's proffered interpretation erroneous or inconsistent. As earlier noted, the sections of both the Manual and the HIM-15 were to be applied in determining the nature and extent of the costs allowed, and we believe that the Secretary reasonably construed the terms to be conjunctive rather than mutually exclusive.

The petitioner next contends that the subsequent amendment of the Manual in 1983 to specifically limit allowable capital interest to the amount recognized for

---

[4] The same limitation was also included when the Manual was codified. 55 Pa. Code §1181.260(k).

depreciation, while retaining a cross-reference to HIM-15, belies the Department's assertion that the interest limitation already existed. Our decision in *Leader Nursing Centers, Inc. v. Department of Public Welfare*, 82 Pa. Commonwealth Ct. 53, 475 A.2d 859 (1984), is cited as authority for the petitioner's assertion, but we do not believe that the *Leader* case supports the proposition advanced here. In *Leader*, the Department had amended the Manual to disallow the costs concerned (which were allowed under the HIM-15), but it asserted that such costs were foreclosed in another portion of the Manual which had not been changed by amendment. This Court accordingly questioned what need there was for an amendment to specifically exclude costs already purported to have been excluded by the Manual. Here, however, the disallowance was based upon the provisions of the HIM-15, and is not claimed to have been excluded directly by the Manual prior to its amendment. Moreover, the amendment in question was implemented when the Manual was being codified into its current position as part of the Pennsylvania Code. Inasmuch as the amendment brought the previously followed policies and standards under "one roof" within the Code, it served to clarify the pertinent regulations.

The petitioner last contends that we should not defer to the Department's interpretation because it is allegedly inconsistent with the Department's practices prior to 1980. The example given, however, concerned reimbursements made to one of the facilities for which, following sale of the facility by a county to its current owners, audits were inexplicably performed by the Auditor General's office, which is charged with the audit of County nursing facilities. We do not believe, therefore, that the Department may be held to regulatory interpretations made by another agency or that the consistency of the Department's interpretation may properly

be evaluated against actions approved by such other agency.

Our review of the adjudication reveals substantial evidence to support the findings, and, because it appears that the decision was in accordance with the law applicable to this matter, we will, therefore, affirm the order of the Department with respect to Grand Oak in the appeal docketed at 3251 C.D. 1983 as well as the other Department orders issued in reliance thereon, docketed at 577 C.D. 1984 and No. 2391 C.D. 1984.

### ORDER IN 3251 C.D. 1983

AND NOW, this 11th day of August, 1986, the order of the Department of Public Welfare in the above-captioned matter is affirmed.

### ORDER IN 577 C.D. 1984

AND NOW, this 11th day of August, 1986, the order of the Department of Public Welfare in the above-captioned matter is affirmed.

### ORDER IN 2391 C.D. 1984

AND NOW, this 11th day of August, 1986, the order of the Department of Public Welfare in the above-captioned matter is affirmed.