579 A.2d 440

**HOMESTEAD NURSING AND CONVALESCENT HOME, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 4, 1990.

Decided Aug. 3, 1990.

Reargument Denied September 19, 1990.

48

Charles O. Barto, Jr., with him, Charles I. Artz, Charles O. Barto, Jr. and Associates, Harrisburg, for petitioner.

Bruce G. Baron, Asst. Counsel, Harrisburg, for respondent.

Before PALLADINO and McGINLEY (P.), JJ., and BARRY, Senior Judge.

PALLADINO, Judge.

Homestead Nursing and Convalescent Home (Petitioner) appeals from an order of the Secretary of the Department of Public Welfare (Secretary) which vacated an order of the Office of Hearings and Appeals (OHA) and reinstated cer-

tain adjustments made by Department of Public Welfare auditors (DPW) in certifying Petitioner's allowable costs for Medical Assistance (MA)[1] reimbursement purposes. We affirm.

Petitioner purchased the Homestead Nursing and Convalescent Home (facility) as an on-going operation. The prior owners participated in the Medical Assistance Program and obtained reimbursement for depreciation with respect to the assets sold to Petitioner.

During an audit for the fiscal period of March 23, 1983 to June 30, 1983, DPW auditors disallowed $19,469.00 in depreciation expenses in two separate adjustments and reclassified $3,585.00 in financing fees. One adjustment involved the method Petitioner used to calculate the useful life of assets in determining the annual depreciation rate. The second adjustment involved the method Petitioner used to allocate the value of assets to determine the depreciable basis of these assets. Third, DPW classified what Petitioner terms "soft costs," i.e. legal fees to obtain the mortgage, placement fees, and other amounts paid in course of obtaining a mortgage, as amortized operating costs. Petitioner had classified these costs as a component of interest on capital indebtedness.

Petitioner appealed to a hearing attorney who sustained the appeal and reversed DPW auditors decision. The OHA affirmed. DPW sought reconsideration which the Secretary granted, reversing OHA.

Petitioner raises the following issues on appeal:[2] 1) whether Secretary erred in reversing OHA as to computa-

1. Reimbursement for skilled nursing and intermediate care services provided to MA patients for the time period involved in this case is pursuant to the regulations in DPW's Medical Assistance Manual for Allowable Cost Reimbursement for Skilled Nursing and Intermediate Care Facilities (Manual) found at 8 Pa. B. 2826–2838 (1978) and 10 Pa. B. 3106 (1980). The Manual was codified on July 1, 1983 at 55 Pa.Code §§ 1181.201–1181.274. Because the fiscal period relevant in this case is prior to the codification of the Manual, Pennsylvania Bulletin and Manual cites will be used.

2. Our scope of review is limited to a determination of whether the decision is supported by substantial evidence, is in accordance with

tion of the useful life of Petitioner's assets for medicare reimbursement purposes; 2) whether Secretary erred in reversing OHA regarding the method of allocation of purchase price of facility's assets; 3) whether Secretary erred in reversing OHA's reclassification of financing "soft costs" to operating expenses; and 4) whether Secretary's reconsideration process violated Petitioner's constitutional right to due process.

As to the first issue, Petitioner asserts that upon purchase of the facility, it assigned useful lives to the newly acquired assets. "Homestead's assignment was based upon the useful lives employed by the prior owner and considered the number of years the prior owner used the asset. The resulting useful life of each asset under this methodology reflected the economic life remaining to the new owner." Petitioner's brief at 8. DPW continued the useful lives assigned to the assets by the prior owner.

Petitioner argues that DPW's practice "relifed" the assets contrary to our decision in *Grandview Health Homes, Inc. v. Department of Public Welfare*, 122 Pa. Commonwealth Ct. 356, 552 A.2d 720 (1988). In *Grandview*, the purchaser of a nursing facility assigned new useful lives to the assets. DPW required that the purchaser utilize the useful lives assigned by the prior owner. This court interpreted Manual section IV.D.9.a., 8 Pa. B. 2836 (1978) which provides as follows:

[t]he straight-line method of depreciation must be used. Accelerated methods are not acceptable. The amount of annual depreciation is determined by first reducing the cost of the asset [cost basis] by any salvage value and then dividing by the number of years of useful life of the asset. The useful life may be shorter than the physical life depending upon the usefulness of the particular asset to the provider. Facilities shall follow the guidelines on useful life published by the Internal Revenue Service or

the law, and whether any constitutional rights have been violated. *Harston Hall Nursing and Convalescent Home, Inc. v. Department of Public Welfare*, 99 Pa.Commonwealth Ct. 475, 513 A.2d 1097 (1986).

the Uniform Chart of Accounts and Definitions for Hospitals published by the American Hospital Association.

This court also interpreted Manual section IV.D.9.b., 8 Pa. B. 2836 (1978) which states that "[t]he method and procedure for computing depreciation must be applied from year to year on a consistent basis." We concluded that the two Manual provisions must be read together and held that DPW's requirement that the new owner utilize the prior owner's assigned asset life is proper.

*Grandview* does not support Petitioner's position. DPW's use of the prior owner's useful life does not "relife" the asset as Petitioner contends. Under DPW's procedure, the sale of an asset does not change the useful life of an asset. Petitioner's procedure of assigning a new useful life to the asset based on the useful life to the new owner could have the effect of "relifing" an asset. This practice was prohibited by *Grandview.* Consequently, we hold[3] that DPW's procedure of continuing the prior owner's useful life assessment in this case is proper under *Grandview* and the Manual.

■ As to the second issue, Petitioner challenges DPW's allocation of depreciable cost basis among the newly acquired assets. Petitioner apportioned its lump sum acquisition cost among the assets based upon independent appraisals of the value of the assets.[4] The basis of each asset was adjusted according to a ratio which reflected the actual purchase price. DPW apportioned the depreciable cost ba-

3. Petitioner also argues that, because the DPW's useful life procedure does not follow from the Manual, the procedure is controlled by Section 116.1 of the Medicare Provider Reimbursement Manual. Petitioner also argues that, because DPW's procedure does not follow from the Manual, its policy is in violation of what is commonly called the Commonwealth Documents Law, Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §§ 1201–1202. Both of these arguments are based on the premise that DPW's procedure does not follow from the Manual. Because we rejected that premise here and in *Grandview,* we do not further address these arguments.

4. Petitioner allocated the $5,000,000 lump sum purchase price of the facility as follows: $350,000 to land, $75,000 to land improvement, $4,120,000 to building, $90,000 to residences and $365,000 to equipment.

sis to each asset based upon a ratio established by the prior owner.[5]

Petitioner asserts that DPW has no authority to justify its methodology. Petitioner argues that the Manual does not address the allocation of cost basis among assets following a lump sum purchase of an ongoing facility. Petitioner argues that its allocation is consistent with Manual section IV.D.9.f, 8 Pa. B. 2836 (1978) which states in pertinent part as follows:

> The cost basis for depreciable assets of a facility purchased as an ongoing operation shall be the lesser of the purchase price or the fair market value based on the lesser of at least two bonafide appraisals at the time of the sale and less any straight line depreciation by the prior owner....

Secretary concluded that Manual section IV.D.9.f. states how the new depreciable basis for *each asset* is determined and requires two bona fide appraisals for each asset. Secretary held that Petitioner failed meet its burden of providing the proper documentation.

 Secretary's interpretation of DPW's regulations are controlling unless it is plainly erroneous or inconsistent with the regulation. *Fair Winds Manor v. Department of Public Welfare*, 517 Pa. 106, 535 A.2d 42 (1987). We hold that Secretary's interpretation of Manual section IV.D.9.f to require two bonafide appraisals for each asset acquired in a purchase of an ongoing operation conforms to the plain language of the regulation and is not plainly erroneous.

In the case before us, Petitioner admitted at the hearing that it supplied only one detailed bonafide appraisal that valued each asset as required by Secretary's interpretation of Manual section IV.D.9.f.[6] Consequently, we conclude that Petitioner has failed to meet its burden of providing

---

5. For example, if the prior owner's cost for the building was one-third of the total depreciable basis, then one-third of the new owner's purchase price would be allocated to the building as the depreciable basis.

6. Hearing Transcript of 2/20/86 at 87.

documentation of the cost basis of the depreciable assets in this case.

However, this does not end our inquiry as DPW did not disallow all stepped-up basis for these assets. It is clear that failure to provide proper documentation can result in disallowance of reimbursement. *See Northwestern Institute of Psychiatry v. Department of Public Welfare*, 99 Pa.Commonwealth Ct. 213, 513 A.2d 495 (1986). Instead, without the documentation required by the Manual section IV.D.9.f, DPW apportioned the depreciable cost basis to each asset based upon a ratio of asset cost to total purchase price as stated by the prior owner.

In *Mountain Rest Nursing Home, Inc. v. Department of Public Welfare*, 73 Pa. Commonwealth Ct. 42, 457 A.2d 600 (1983), we held that, where a facility failed to produce the required depreciation records through no fault of its own, DPW must attempt to make an estimated calculation of the cost basis of depreciable assets.

While *Mountain Rest* deals with the establishment of the actual cost basis of purchased assets and we deal here with the allocation of cost basis among purchased assets, we conclude that *Mountain Rest* is indicative of DPW's authority to utilize alternate methods to calculate the cost basis of depreciable assets when the proper documentation is not provided by a facility. We find nothing inherently improper in DPW's use of the prior owner's cost basis to allocate the depreciation among the purchased assets.

As to the third issue, Petitioner asserts that DPW improperly classified the cost of legal fees, a placement fee and other amounts paid in the course of obtaining a mortgage, commonly called soft costs, as net operating costs. Petitioner had classified these costs as a component of interest on capital indebtedness.[7] Petitioner argues that DPW regulations clearly allow inclusion of soft costs as a component of interest on capital indebtedness.

**7.** Interest on capital indebtedness is excluded from ceiling limitations on net operating costs for the various facilities. Manual section III.E.,

Manual section II defines interest on capital indebtedness as "[t]he cost incurred for funds borrowed for capital purposes. Examples: acquisition of facilities, equipment and capital improvements. Generally, loans for capital purposes are long-term loans." Petitioner argues that although the Manual does not specifically address soft costs, the regulation does not limit reimbursement on capital indebtedness to interest rate alone.

Secretary held that, as a matter of interpretation, DPW has precluded soft costs from interest on capital indebtedness. As Petitioner clearly admits, soft costs are not specifically provided for in the Manual. Secretary's interpretation of interest to eliminate soft costs and limit "interest" to the actual interest rate is not plainly erroneous or in violation of the regulation. *Fair Winds.* Therefore, we will not disturb this interpretation.

 As to the final issue, Petitioner asserts that its due process rights were violated during the Secretary's reconsideration process. Petitioner contends that Secretary, without holding additional hearings, made no findings of fact and adopted verbatim DPW's motion for reconsideration as a final order. Petitioner alleges:

"[a]lthough there is no record on this point, it would appear that the only oral input received by the Secretary was from the very counsel's office that was unsuccessful at the hearing. It is reasonable to assume that DPW counsel, either counsel who handled the hearing or other counsel who were not involved in this case but who have similar cases, met with and advised the Secretary of the agency's legal position and the financial consequences of the Homestead decision."

Petitioner's Brief at 39 (footnote omitted). Petitioner argues that the commingling of the adjudicatory and prosecutorial functions by DPW attorney's unconstitutionally tainted the proceedings. Petitioner cites *Bruteyn v. State Dental Council & Examining Board,* 32 Pa. Commonwealth Ct. 541, 380 A.2d 497 (1977) for support.

In *Bruteyn,* this court held that prosecutorial and adjudicatory functions were unconstitutionally intertwined where the same attorney general who investigated and prosecuted the case also advised the Dental Board in its pre-investigatory meeting, supplied it with legal advice regarding defendant's evidentiary motions, and drafted a final adjudication and order.

*Bruteyn* is clearly distinguishable from the case before us. Petitioner's allegations of commingling of functions are based merely on assumptions and accusation. Nothing of record supports Petitioner's allegations.

Further, the fact that Secretary adopted language from DPW's request for reconsideration in drafting his final order does not deny Petitioner due process where the Secretary's conclusions of Law are reviewed and affirmed by this court. *See Sullivan v. Workmen's Compensation Appeal Board (Philadelphia Electric Company),* 120 Pa. Commonwealth Ct. 364, 548 A.2d 404 (1988) and *Horsley v. Philadelphia Board of Pensions and Retirement,* 519 Pa. 264, 546 A.2d 1115 (1988).

Accordingly, we affirm.

## ORDER

AND NOW, August 3, 1990, the order of the Secretary of the Department of Public Welfare in the above-captioned case is affirmed.