680 A.2d 867

**SUBURBAN MANOR/HIGHLAND HALL CARE CENTER and Golfview Manor Nursing Home, Appellants,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Appellee.**

Supreme Court of Pennsylvania.

Argued March 9, 1994.

Decided July 31, 1996.

Charles O. Barto, Jr., Charles O. Barto, Jr. & Associates, Harrisburg, for appellants.

Jeffrey P. Schmoyer, Department of Public Welfare, Pittsburgh, Ernest D. Preate, Jr., Attorney General, Harrisburg, for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

NIX, Chief Justice.

Appellants Suburban Manor/Highland Hall Care Center and Golfview Manor Nursing Home ("nursing homes"), appeal from an Order of the Commonwealth Court affirming certain adjustments made by the Department of Public Welfare ("DPW") to Appellants' cost reports for the fiscal years ending June 30, 1981, June 30, 1983, and June 30, 1984. *Suburban Manor/Highland Hall Care Center v. Department of Public Welfare*, 146 Pa.Commw. 129, 604 A.2d 1185 (1992) (hereinafter *Suburban* ). Specifically, Appellants claim·that five adjustments to reimbursements made pursuant to the Pennsylvania Medical Assistance Program (Medicaid) [1] were improper. Three of these adjustments involved depreciation: (1) the allocation of the purchase price of the nursing homes; (2) the disallowance of the vendor's depreciation based on its gain on sale; and (3) the computation of useful asset lives. The remaining two adjustments involve interest: (1) the disallowance of interest expense as to debt below the depreciation basis; and (2) the disallowance of interest expense as to assets purchased from the prior owner's operating company. For the reasons stated below, we affirm the Order of the Commonwealth Court.

1. The program under which Appellants sought reimbursement, codified at 62 P.S. § 443.1, is a joint federal-state program coordinated with, and partially funded by, the federal medical assistance program under the Social Security Act, 42 U.S.C. § 1395 *et seq.* Federal and state manuals provide the regulations which govern the program. The federal regulations are set forth at 42 C.F.R. § 447.250 *et seq.* and published as federal Manual HIM–15 [HIM–15]. Pennsylvania's regulations are set forth in the Manual of Allowable Cost Reimbursement for Skilled Nursing and Intermediate Care Facilities 2832–38 (1978), as amended by 10 Pa. Bulletin 3106 (1980)(hereinafter "the Manual"). The Manual is the principal authority governing the Pennsylvania Medicaid cost reimbursement program and prevails when its terms differ form those of HIM–15. 10 Pa. Bulletin 3107.

   The Medicaid program provides for reimbursement of long term care facilities in two major categories: (1) per diem operating costs; and (2) capital costs allocable to services provided to Medicaid patients. All of Appellants' claims concern reimbursement for capital costs.

In June of 1981, Around the World of Pennsylvania ("ATW") purchased certain assets of the nursing homes from Golfview Suburban Associates ("GSA"). ATW paid $873,-161.13 for the assets of Golfview Manor and $1,254,892.79 for the assets of Suburban/Highland Hall. In March of 1984, ATW merged with Trade Around the World of Pennsylvania ("TAW"), and DPW, for auditing purposes, treated the merger as retroactive to July 1, 1983.

The DPW then took the five actions which Appellants challenge in this matter. First, when TAW purchased the assets of the nursing homes, neither it nor the vendor assigned values to the separate assets included in the sale. Instead, TAW sought to use the reports of two independent appraisers to allocate the purchase price among the categories of land, buildings and equipment. The DPW, however, rejected the appraisals, instead determining the values of the three assets categories according to the prior owner's allocation. This resulted in lesser depreciation allowances for TAW than it would have received had the appraisals been used.

Second, in establishing the prior owner's depreciation, DPW disallowed most of the vendor's depreciation for its final year of operation because the sale price negotiated with TAW showed that the vendor did not suffer the economic burden of full depreciation for that year. However, when DPW determined TAW's depreciable basis in the properties, it also disallowed the depreciation allocable to the vendor, including the depreciation disallowed in the vendor's final year of ownership.

Third, DPW assigned useful lives to the nursing homes based upon the useful lives assigned by the prior owner. Annual depreciation was then determined by dividing each asset's new cost basis by its original useful life.

Fourth, DPW determined the percentage of interest disallowance by dividing the prior owner's depreciation by the purchase price. This percentage corresponds with that portion of the loan which was used to finance the difference

between each facility's purchase price and its new cost basis, and remains constant throughout the payment of the loan.

Finally, The Department did not consider the assets purchased from Skilled Health Facilities ("SHF") by TAW in determining the percentage of interest disallowance. Instead, DPW viewed this conveyance as a separate transaction.

Appellants filed appeals with DPW regarding the above five adjustments, and an administrative hearing on these matters was held on June 23, 1988. After a final order denying the appeals in their entirety was entered on April 27, 1989, Appellants then filed an appeal with the Commonwealth Court, which found all adjustments proper as discussed more fully below. This appeal followed.

■ At the outset, we note that the DPW's interpretation of its own regulations is entitled to judicial deference unless it is plainly erroneous, inconsistent with regulations, or contrary to the enabling statute. *Commonwealth, Dep't of Pub. Welfare v. Forbes Health Sys.*, 492 Pa. 77, 81, 422 A.2d 480, 482 (1980). Therefore, our scope of review is limited to a determination of whether the adjudication is supported by substantial evidence, is in accordance with the law, or violates any constitutional rights. *Grandview Health Homes, Inc. v. Commonwealth, Dep't. of Pub. Welfare,* 122 Pa.Commw. 356, 359 n. 2, 552 A.2d 720, 722 n. 2 (1988). With this narrow scope of review in mind, we turn to Appellants' contentions.

## I. Allocation of Purchase Price

■ Appellants first contend that the DPW erred in allocating the purchase prices of the nursing homes according to the prior owner's allocations. Instead, Appellants assert that the DPW should have used the values assigned by the independent appraisers at the approximate time of the sale. Appellants base their argument on the fact that section IV.D.9.f of the Manual, which governs reimbursement of a long term care facility's depreciation on capital assets, is silent as to allocation of costs to groups of assets. The section provides:

The cost basis for depreciable assets of a facility purchased as an ongoing operation shall be the lesser of the purchase price or the fair market value based on the lessor of at least two bona fide appraisals at the time of the sale and less any straight line depreciation by the prior owner.

According to Appellants, the DPW's interpretation is illogical because the prudent purchaser who buys assets at less than fair market value ends up having its reimbursement determined by the prior owner's allocation. This in turn violates federal mandates to assure rates that are reasonable and adequate to meet costs incurred by efficiently and economically run facilities. *See* 42 U.S.C § 1396a(a)(13)(A).

However, as the Commonwealth Court correctly observed, the Manual requires the assignment of a cost basis according to the *lesser* of the purchase price or the fair market price as appraised. *Suburban,* 146 Pa.Commw. at 134, 604 A.2d at 1187. Thus, the DPW properly rejected the tendered appraisals because, given that the appraisals were correctly rejected in determining the cost basis, "section IV D(9)(f) does not require that the cost basis for the three asset categories, included in the total assets, be determined based upon these appraisals." *Id.*

Since the transaction documents in connection with the purchases did not allow a literal interpretation of section IV.D.9.f of the Manual, and in the absence of any applicable provision in HIM–15, it was quite reasonable, as the Commonwealth Court noted, to use the prior owner's listed costs. Clearly, the failure of the transaction documents to make an allocation of the purchase price could not deprive DPW of the benefit of the provisions of section IV.D.9.f of the Manual which specified that the cost basis "shall be the *lesser* of the purchase price or the fair market value ...." (emphasis added). Where the purchase price (or allocated purchase price) cannot be determined from the transaction documents, the method adopted by the DPW in the instant case is

reasonable because of the consistency it affords.[2]

## II. Inclusion of Disallowed Depreciation Expense in Computing Prior Owner's Depreciation

■ Appellants next contend that the DPW improperly considered the amount of depreciation offset by the gain on sale in computing the prior owner's depreciation. The DPW offset the seller's allowable depreciation by the amount of gain seller realized from the sale of the facilities, which Appellants concede is proper under Manual section IV.D.9.e, which provides: "Gains and losses realized from the disposal of depreciable assets, not to exceed 10% of the total allowable depreciation for the year, are an allowable cost." However, Appellants challenge the DPW's determination of their depreciable basis in the properties, which did not give Appellants the benefit of an increased cost basis that would result from the disallowance of the seller's depreciation in its final year of ownership.

The DPW correctly maintains that a buyer's cost basis under section IV.D.9.f is the purchase price "less any straight line depreciation by the prior owner" without regard to any reduction imposed by DPW under Manual section IV.D.9.e. Such an interpretation of section IV.D.9.f is proper since the section makes no reference to possible adjustment to the straight line depreciation under the preceding subsection (section IV.D.9.e). Moreover, any other interpretation would result in a windfall increased cost basis (albeit a relatively small one) to the buyer.

## III. Assignment of Useful Lives

■ Appellants' contention is that, in assigning useful lives to Appellants' depreciable assets in the nursing homes, the DPW erred in relying on the useful lives assigned by the prior owner. Instead, Appellants claim that the DPW should have used an updated useful life (also known as "relifing"), based

---

2. Before the Commonwealth Court, Appellants also relied upon section 104.14A of HIM–15 to support their position, and they also claimed that the DPW's methodology violated the Commonwealth Documents Law, 45 P.S. § 1102–1602. However, the Commonwealth Court rejected these arguments, see Suburban, 146 Pa.Commw. at 135–36, 604 A.2d at 1188, and they were not raised before this Court.

upon American Hospital Association ("AHA") guidelines, less years of use. Appellants claim that since the Manual in effect at the time of the assignment was silent on the calculation method, HIM–15 should control. They also argue that DPW's methodology contravenes the step-up in basis, required by its own regulations.

However, as the Commonwealth Court correctly observed, the DPW's regulations do not permit relifing. The court noted that it had previously considered the relifing issue in *Grandview Health Homes, Inc. v. Commonwealth, Dep't of Pub. Welfare,* 122 Pa.Commw. 356, 552 A.2d 720 (1988), where the facility raised the exact argument Appellants assert here. The court rejected the facility's position, holding that section IV.D.9.b. of the Manual controlled, "Manual section IV.D.9.b clearly requires that the method and procedure used for computing depreciation must be consistent year-to-year. If asset lives were permitted to be changed, the method and procedure of calculating depreciation would not be consistent." *Id.* at 368, 552 A.2d at 726.

. Recognizing that "Manual Section IV.D.9.a. conditions depreciation allowance on a requirement that asset lives be in accordance with IRS or AHA guidelines," *id.* at 369, 552 A.2d at 726, the *Grandview* court concluded that a new owner could assign new lives consistent with those guidelines *if* the prior owner did not do so. However, in applying *Grandview* to the present matter, the court noted that Appellants did not contend that the prior owner's lives were inconsistent with the applicable guidelines. As such, the court reasoned that the *Grandview* exception was inapplicable. *Suburban,* 146 Pa. Commw. at 139, 604 A.2d at 1190.

We agree with the Commonwealth Court that, contrary to Appellants' position, section IV.D.9.b controls by requiring that "[t]he method and procedure for computing depreciation must be applied from year-to-year on a consistent basis." The DPW has reasonably interpreted this provision to require that once a useful life has been established by an owner, it cannot be changed by that owner or any subsequent owner. Thus, the Manual is not silent on the DPW's useful life procedure, as

Appellants assert. *See Homestead Nursing & Convalescent Home v. Commonwealth, Dep't of Pub. Welfare,* 135 Pa. Commw. 47, 51 n. 3, 579 A.2d 440, 444 n. 3 (1990) (premise that DPW's procedure does not follow from Manual is erroneous), *appeal denied,* 530 Pa. 648, 607 A.2d 257 (1992).[3]

■ Appellants also claim that the DPW methodology applied here violates its own regulations concerning step-up in basis. *See* Manual section IV.D.9.f. (allowing increase in an asset's cost basis when it is sold). However, the DPW's methodology can result in greater depreciation to the new owner than would have been paid to the prior owner had the facility not been sold.[4] Further, the fact that application of section 9.f can in some instances "result in the failure to permit total depreciation of the original cost basis of a facility . . . is not enough to warrant an invalidation of the rule" by the court. *Mountain Rest Nursing Home, Inc. v. Commonwealth, Dep't of Pub. Welfare,* 73 Pa.Commw. 42, 48, 457 A.2d 600, 603 (1983).

Again, the DPW's interpretation of its own regulations must be upheld unless clearly erroneous, inconsistent with regulation, or contrary to the underlying statutes. Here, the DPW's interpretation of section 9.a. is a reasonable one, assuring

3. Further, even if the Manual were silent on the issue, Appellants do not point to any provision of HIM–15 which furnishes a definition for remaining useful lives. Thus, Appellant's argument that our decision in *Northwood Nursing & Convalescent Home, Inc. v. Commonwealth, Dep't of Pub. Welfare,* 523 Pa. 483, 567 A.2d 1385 (1989), controls must fail. In Northwood, we determined that if matters are not explicitly covered by the Manual but HIM–15 furnishes *detailed regulations* concerning those matters, HIM–15 should apply. *Id.* at 488, 567 A.2d at 1387.

4. The DPW presents this example: Suppose a building was purchased in 1962 for $100,000. A useful life of 40 years was assigned, with depreciation taken at a rate of $2,500 per year. In 1982, the building had a fair market value of $220,000 and was purchased for $200,000. The cost basis to the new owner was $150,000, obtained by taking the purchase price and subtracting the prior owner's depreciation of $50,000 ($2,500 per year multiplied by 20 years). Applying the DPW's methodology, the new owner would be allowed to take total depreciation of $75,000, at an annualized rate of $3,750 for 20 years (obtained by dividing the $150,000 cost basis by the useful life of 40). This is 150% of the amount of depreciation the prior owner would have been entitled to had he retained ownership.

consistency in the method and procedure for computing depreciation between separate ownership periods. Thus, we agree with the Commonwealth Court that the DPW's computation of useful lives was proper.

## IV. Disallowance of Interest Expense as to Debt Below Depreciation Basis

Appellants' fourth contention is that the DPW erred in disallowing compensation for its interest expense regarding interest payable on amounts equal to the prior owner's depreciation. Appellants claim that there is no regulatory authority for this disallowance, but that the DPW instead based its determination on the Commonwealth Court's decision in *Grand Oak Nursing Home, Inc. v. Commonwealth, Dep't of Pub. Welfare,* 116 Pa.Commw. 453, 541 A.2d 800 (1986), *aff'd per curiam,* 518 Pa. 54, 540 A.2d 265 (1988). The DPW, however, claims that it based its calculation on § 203 of HIM–15,[5] which the Commonwealth Court has previously recognized as proper in both *Grand Oak* and *Grandview.*

The DPW is correct that *Grand Oak* did not grant the DPW the authority to make the adjustment at issue here, but instead merely recognized that DPW has this authority based on the Manual and HIM–15. More specifically, *Grand Oak* determined that since section IV.D.10.c. of the Manual provides only general interest limitations,[6] the DPW could read section 10.c. in concert with the more specific, restrictive interest limitations in section 203 of HIM–15. *Id.* at 458–59, 541 A.2d at 802–03; *accord Grandview.*

Since depreciation taken by a prior owner is not an allowable capital item for the computation of depreciation by the new purchaser, it follows that section 10.c. and HIM–15 may be read together to exclude interest on such an item from

5. Section 203 of HIM–15 provides: "[w]here a loan is obtained to finance the purchase of a facility ... and the purchase price exceeds the ... cost basis, ... interest expense on that portion of the loan used to finance the excess ... is not allowable."

6. Section IV.D.10 of the Manual merely provides that "[n]ecessary and proper interest on both current and capital indebtedness is an allowable cost."

capital indebtedness. Therefore, the DPW's calculation was clearly reasonable under the pertinent provisions.

### V. Disallowance of Interest Expense as to Assets From Prior Owner's Operating Company

Finally, Appellants claim that the DPW erred in disallowing interest expense on the purchase of assets and liabilities acquired through TAW from SHF, the parent company that operated the two homes. More specifically, while DPW allowed Appellants to take depreciation on these assets, it did not consider these assets in determining the percentage of interest disallowance on the facilities' loan payment. Appellants contend that the cost and prior depreciation of these assets should be included in this computation.

However, as Appellants concede in their brief, this issue is largely a factual one, and we are unable to conclude that the DPW's disregard of the TAW/SHF assets was based on factual determinations that were clearly erroneous. *See Suburban,* 146 Pa.Commw. at 140–41, 604 A.2d at 1190–91 (discussing lack of evidence to support Appellants' position).

Therefore, for the reasons set forth above, we affirm the Order of the Commonwealth Court.

PAPADAKOS, J., and MONTEMURO, J., who was sitting by designation, did not participate in the decision of this case.

ZAPPALA, J., concurs in the result.