**RISING SUN ENTERTAINMENT, INC., Appellant**

v.

**PENNSYLVANIA LIQUOR CONTROL BOARD.**

Commonwealth Court of Pennsylvania.

Submitted March 1, 2004.

Decided Nov. 5, 2004.

---

Miriam A. Newman, Philadelphia, for appellant.

James E. Dailey, Philadelphia, for appellee.

BEFORE: COLINS, President Judge, COHN JUBELIRER, Judge (P.), MIRARCHI, JR., Senior Judge.

OPINION BY President Judge COLINS.[1]

Rising Sun Entertainment, Inc., t/a Purple Orchid (Purple Orchid) appeals from the order of the Court of Common Pleas of Philadelphia County that affirmed the decision of the Liquor Control Board (Board) affirming the decision of an administrative law judge (ALJ) that found that the Purple Orchid had permitted lewd, immoral, or improper entertainment on its premises and that it had illegally discounted alcoholic beverages. We affirm the trial court on the issue of lewd, immoral, or improper entertainment and reverse the trial court

---

1. This case was reassigned to this author on April 14, 2004.

on the issue of the discounting of alcoholic beverages.

The Purple Orchid, a bar, restaurant, and cabaret located at 3275 South 61st Street in the City of Philadelphia, was visited on five occasions between September and December 1999 by an undercover officer of the Pennsylvania State Police acting in the capacity of an agent for the Bureau of Liquor Control Enforcement (LCE). Based on what he observed at the Purple Orchid, the agent issued citations to the establishment's management for permitting lewd, immoral, or improper entertainment on its premises in violation of Section 493(10) of the Liquor Code,[2] 47 P.S. § 4–493(10), and for illegally discounting beverages in violation of Liquor Control Board Regulation § 13.102(a),[3] 40 Pa. Code § 1301.

At the hearing of this matter before the ALJ, the agent who issued the citation alleging that the Purple Orchid had permitted "lewd, immoral or improper" entertainment on its premises testified that he had gone to the Purple Orchid on five occasions from September to December 1999 and observed women dancing bare-breasted. The manager of the Purple Orchid testified that the dancers were required to use liquid latex to cover their nipples when performing topless. He testified that the managers check occasionally to be sure dancers comply. Further, he identified a list of The Purple Orchid's "dancer guidelines," which require dancers to cover their nipples with liquid latex. The ALJ found that liquid latex is clear when it dries and that it effectively covers nothing. He concluded that the Purple Orchid had violated the lewd, immoral, or improper provision of the Liquor Code and imposed a $1,000.00 fine.

The officer who issued the citations next testified that he had noticed an advertisement in the *Philadelphia Daily News* on November 8, 1999, offering a discount at the Purple Orchid on all domestic bottled beer from 2–7 p.m. and that when he was at the bar on December 9, 1999, and inquired as to drink specials, the bartender

---

**2.** Act of April 12, 1951, P.L. 90, *as amended.*
Section 4–493(10) provides, in pertinent part,
§ **4–493. Unlawful acts relative to liquor, malt and brewed beverages and licensees**
It shall be unlawful-
(10) ... for any licensee, under any circumstances, to permit in any licensed premises or in any place operated in connection therewith any lewd, immoral or improper entertainment, regardless of whether a permit to provide entertainment has been obtained or not.

**3.** Board Regulation 13.102 states, in pertinent part:
(a) *General.* Retail licensees may discount the price of alcoholic beverages for a consecutive period of time not to exceed 2 hours in a business day, but may not engage in discount pricing practices between 12 midnight and the legal closing hour. Retail licensees may not engage in the following discount pricing practices unless specifically excepted in subsection (b):

(1) The sale or serving, or both, of more than one drink of liquor, wine, or malt or brewed beverages at any one time to any one person, for the price of one drink.
(2) The sale or serving, or both, of an increased volume of one drink of liquor, wine, or malt or brewed beverages without a corresponding and proportionate increase in the price for the drink.
(3) The sale or serving, or both, of an unlimited or indefinite amount of liquor, wine, or malt or brewed beverages for a set price.
(4) The pricing of alcoholic beverages in a manner which permits the price to change within the 2–hour period.
(b) *Exceptions.* Nothing in subsection (a) prohibits:
. . . .
(2) The offering for sale of *one specific type* of alcoholic beverage or drink per day or a portion thereof at a reduced price, if the offering does not violate subsection (a).
(Emphasis added.)

told him that all domestic bottled beer was on sale from 2–7 p.m. for $2.00 per bottle. The Purple Orchid does not contest that its discount was in effect for a period in excess of two hours, the time limitation in the regulation, but it asserts that its action in discounting all domestic bottled beer falls within an exception in subsection (b)(2) of the regulation in that the discount applied to "one specific type of alcoholic beverage," e.g. domestic bottled beer, and was therefore was not subject to the two hour limitation.

The ALJ, after reviewing previous decisions of other ALJs and the Board on the issue of discounts for alcoholic beverages, determined that domestic bottled beer was not a specific type of alcoholic beverage, found that the Purple Orchid had improperly discounted the sale of alcoholic beverages, and imposed a $50.00 fine for this count in the citation.

The Purple Orchid appealed, and the Board affirmed, concluding that the ALJ's findings were supported by substantial evidence, that its interpretation of the lewd, immoral, or improper provision to prohibit nude dancing did not violate free expression, and that the Purple Orchid's daily discount on all domestic bottled beer did not fall within the exception of subsection (b)(2) of the regulation. The Purple Orchid appealed to the Court of Common Pleas of Philadelphia County (trial court), requesting a trial *de novo*.

The trial court conducted a trial *de novo* at which it considered the matter on the record made before the ALJ and took additional evidence in the form of testimony from a dancer employed by the Purple Orchid. The dancer stated that she uses liquid latex mixed with makeup foundation to look like skin and explained that she views her dancing as a form of self-expression. The trial court, relying on our decision in *Purple Orchid v. Pennsylvania State Police*, 721 A.2d 84 (Pa.Cmwlth.1998) (*Purple Orchid I*),[4] *affirmed*, 572 Pa. 171, 813 A.2d 801 (2002),[5] found that the Purple Orchid had permitted lewd, improper, or immoral entertainment on its premises in violation of Section 493(10) of the Liquor Code, 47 P.S. § 4–493(10). The trial court, relying on the record made before the ALJ, affirmed the Board's decision that the Purple Orchid had violated Liquor Control Board Regulation § 13.102(a), 40 Pa.Code § 1301, by discounting all domestic bottled beer. This appeal followed.

The questions we are asked to determine are: 1) whether Purple Orchid preserved the issue of whether Section 493(10) of the Liquor Code is an unconstitutional infringement on the right of free expression guaranteed by Article 1, Section 7 of the Pennsylvania Constitution[6];

---

**4.** The case before us is the third case in what is becoming the saga of the Purple Orchid. In *Purple Orchid I* we found that the establishment was permitting lewd, improper, or immoral entertainment on its premises when it allowed its dancers to dance topless as they have done here. In *Rising Sun Entertainment, Inc. v. Commonwealth*, 829 A.2d 1214 (Pa.Cmwlth.Ct.2003), *Purple Orchid II*, we found that the owners of the Purple Orchid had allowed lewd, improper, or immoral entertainment on their premises when their dancers danced topless, simulated sex acts in patrons laps, and solicited tips by pulling their g-stings away from their pubic areas to allow patrons to insert bills between the g-strings and their bodies.

**5.** The Supreme Court's opinion in *Purple Orchid I*, affirming this Court, was not issued until several months after the trial court issued its written opinion in this case.

**6.** Article 1, Section 7 of the Pennsylvania Constitution states, "The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty."

2) whether Section 493(10) of the Liquor Code is an unconstitutional infringement on the right of free expression guaranteed by Article 1, Section 7 of the Pennsylvania Constitution; and 3) whether domestic bottled beer is a specific type of alcoholic beverage for the purpose of Board Regulation 13.102(b) or whether the regulation is vague and therefore void.

■ We first address the Board's assertion that the Purple Orchid waived its free expression challenge by failing to raise the issue below in that the Purple Orchid did not refer specifically to Article 1, Section 7 of the Pennsylvania Constitution at trial, in its filings in the trial court, or in its notice of appeal. The Purple Orchid claims that it preserved this issue in its Pa. R.A.P. 1925(b) statement of matters complained of on appeal. As a matter of law, however, the mere mention of an issue in a 1925(b) statement is insufficient to preserve an issue for appellate review. *Davis v. Woxall Hotel, Inc.*, 395 Pa.Super. 465, 577 A.2d 636, 639, n. 3 (1990). Our review of the record reveals that there is no specific citation in any part of the record to the rights of free expression guaranteed by Article 1, Section 7 of the Pennsylvania Constitution aside from that in the 1925(b) statement, so the question then becomes whether the Purple Orchid litigated the issue of free expression at trial sufficiently to create "a record adequate for appellate review." *Dilliplaine v. Lehigh Valley Trust Company*, 457 Pa. 255, 257, 322 A.2d 114, 116 (1974). We conclude that it did.

Our review of the record indicates that the issue of free expression was raised by counsel for the Purple Orchid in the testimony elicited from the dancer in the trial court, that the Purple Orchid filed a post-trial memorandum of law that contained a thorough discussion of the freedom of expression guaranteed by the First Amendment to the United States Constitution,

and that, during trial, the Board was fully aware of the issue as it pertained to Article 1, Section 7. In the transcript made before the trial court, after testimony and discussion about the issue of free expression, counsel for the Board offers to the court a packet of documents that counsel describes as, "IT GIVES YOU KIND OF—I BELIEVE THERE ARE SIX CASE THERE ALL TOGETHER. ONE DATES BACK TO 1959. IT'S CALLED TAHITI BAR AND THE MOST RECENT CASE IS CALLED PURPLE ORCHID. IN A NUTSHELL, JUDGE, THEY UPHOLD THE CONSTITUTIONALITY OF THIS SECTION, SECTION 49310." (Trial transcript, p. 19). Counsel for the Board included in the cases presented to the trial court the seminal case on the issue of free expression as it applies to nude dancing in licensed establishments in Pennsylvania, *In Re Tahiti Bar, Inc.* 395 Pa. 355, 150 A.2d 112 (1959), and one of the *Purple Orchid* cases cited above. *Tahiti Bar* was decided exclusively on the basis of the First Amendment to the United States Constitution but both *Purple Orchid I* and *Purple Orchid II* were decided on the basis of both the First Amendment to the United States Constitution and Article 1, Section 7 of the Pennsylvania Constitution. In addition, the Purple Orchid presented the trial court with a post-trial memorandum in which it presented a thorough discussion of free expression and the First Amendment to the United States Constitution as it applied to nude dancing in licensed establishment without, however, specifically mentioning Article 1, Section 7 of the Pennsylvania Constitution. Even though the Purple Orchid does not specifically mention Article 1, Section 7 anywhere but in its statement of matters complained of on appeal, we find the Board's complaint that the issue of free expression under Pennsylvania law was not preserved by mention in the trial

court to be disingenuous when the Board itself recognized the existence of the issue there and thought it important enough to gather the existing case law and present it to the trial judge. We find that the issue of free expression was litigated sufficiently in the trial court so as to create "a record adequate for appellate review" of the issue under Article 1, Section 7 of the Pennsylvania Constitution. *Dilliplaine.*

 With regard to the merits of the free expression issue, this Court, in *Purple Orchid II,* in an opinion authored by this scrivener, addressed this issue "with a patience buoyed by the hope that we can, at least for the operators of the Purple Orchid, dispose of any remaining misconceptions about the relationship between female dancers in bars and lewd, immoral, or improper entertainment within the Commonwealth." 829 A.2d at 1217. The Purple Orchid presented the same arguments in *Purple Orchid II* as they do here, arguing that the case should be governed by *Pap's A.M. v. City of Erie,* 571 Pa. 375, 812 A.2d 591 (2002) (*Pap's III*). However, consistent with *Purple Orchid I,* we held that issuing a liquor license on the condition that a licensee will not permit lewd, immoral, or improper entertainment on its premises does not violate the free expression provisions of either the United States or Pennsylvania Constitutions and we note here that the Twenty–First Amendment to the United States Constitution gives the states the absolute power over the conditions under which liquor is sold within their borders and even over whether it may be sold at all.[7] Accordingly, we affirm the trial court by holding that the ban on lewd, improper, or immoral entertainment in the form of topless dancing in establishments licensed by the Liquor Control board does not infringe on the rights guaranteed by Article 1, Section 7 of the Pennsylvania Constitution.

 The Purple Orchid next claims that Liquor Control Board Regulation § 13.102(a), 40 Pa.Code § 13.102(a), is void for vagueness. "Vague statutes deny due process of law when they do not give fair notice to persons of ordinary intelligence that their contemplated conduct might be unlawful and do not set reasonably clear guidelines for enforcement, thus, inviting arbitrary and discriminatory enforcement." *South Union Township v. Department of Environmental Protection,* 839 A.2d 1179, 1192 (Pa.Cmwlth.2003) (citation omitted). The Purple Orchid offered evidence that the language in subsection (b)(2) of the regulation, "one specific type" of alcoholic beverage was subject to more than one possible reading. Specifically, the officer who issued the citation stated that the phrase "one specific type" could be interpreted to describe a general category of beverage, such as domestic bottled beer, *or* a specific brand of beer such as Coors, or Budweiser. However, although the Board interprets the phrase "one specific type" to mean a brand, it nonetheless regards "draft beer" as one type because, it says, the number of taps in a bar is limited. The Purple Orchid, relying on the testimony of the officer, asserts that, because the regulation *could* be interpreted in more than one way, it is "vague" and should not be enforced. We have read the testimony of the officer, the Opinion of the Board, and the ALJ's Adjudication in this matter, we are convinced that the regulation is vague and, therefore, unenforceable.

---

7. The Twenty–First Amendment provides, in pertinent part:

> The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

On page 4 of his Adjudication the ALJ tells us that the phrase "one specific type" is not defined in the Liquor Code or the regulations. He then reviews several decisions issued by either the Board or an ALJ on this issue that are clearly in conflict. One opinion holds that discounting two brands of draft beer violated the regulation, *Neil–Ron, Inc.* Board Opinion No. 88–2066, while another concluded that draft beer may be considered one type of beer but that bottled beer could not be considered one specific type of alcoholic beverage, advisory opinion issued to Ye Old Ale House on October 7, 1999. We agree with the ALJ when he says in his opinion, "I can find no logical reason to authorize the 'daily special' discounting of all brands of 'draft beer' while at the same time prohibiting the discounting of all brands of 'domestic bottled beer.' There is no discernable liquor control interest in maintaining such a distinction." There are a myriad of alcoholic beverages available for sale in Pennsylvania. If we restricted our discussion only to beers, the words "one specific type of alcoholic beverage" could apply to all pilsner beers, all lager beers, ales, or stouts, as easily as it could to all imported beer or all domestic beer, bottled or draft. The wording of the statute does not establish what a licensee is permitted to do and what it is forbidden. We therefore conclude that Liquor Control Board Regulation § 13.102(a), 40 Pa.Code § 1301, is so vague as to be unenforceable, and we reverse the trial court on this issue.

Accordingly, for the reasons stated above, the decision of the Court of Common Pleas of Philadelphia County in this matter is affirmed on the issue of lewd, immoral, or improper entertainment and reversed on the issue of discounting alcoholic beverages.

## ORDER

**AND NOW,** this 5th day of November 2004, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby affirmed on the issue of lewd, immoral, or improper entertainment, and reversed on the issue of the discounting of alcoholic beverages.

Concurring and Dissenting Opinion by Judge COHN JUBELIRER.

I agree with the majority's excellent analysis of the free expression issues. However, I believe that the Board's regulation is not unconstitutionally vague and therefore, dissent from that portion of the majority opinion.

Board Regulation 13.102 states, in pertinent part:

(a) *General.* Retail licensees may discount the price of alcoholic beverages for a consecutive period of time not to exceed 2 hours in a business day, but may not engage in discount pricing practices between 12 midnight and the legal closing hour. Retail licensees may not engage in the following discount pricing practices unless specifically excepted in subsection (b):

(1) The sale or serving, or both, of more than one drink of liquor, wine, or malt or brewed beverages at any one time to any one person, for the price of one drink.

(2) The sale or serving, or both, of an increased volume of one drink of liquor, wine, or malt or brewed beverages without a corresponding and proportionate increase in the price for the drink.

(3) The sale or serving, or both, of an unlimited or indefinite amount of

liquor, wine, or malt or brewed beverages for a set price.

(4) The pricing of alcoholic beverages in a manner which permits the price to change within the 2-hour period.

(b) *Exceptions.* Nothing in subsection (a) prohibits:

. . .

(2) The offering for sale of *one specific type* of alcoholic beverage or drink per day or a portion thereof at a reduced price, if the offering does not violate subsection (a).

(Emphasis added.)

Licensee asserts that subsection (b)(2) of this discount pricing regulation is so vague that it should not be enforced. In evaluating this argument, I note first that an agency's interpretation of its own regulations is entitled to judicial deference unless it is plainly erroneous, inconsistent with regulations, or contrary to the enabling statute. *Suburban Manor/Highland Hall Care Center v. Department of Public Welfare,* 545 Pa. 159, 164, 680 A.2d 867, 869 (1996).

The Board, in interpreting the exception in subsection (b)(2) of its regulation, has chosen to draw a distinction between "draft beer" and other types of alcoholic beverages. While, as the majority notes, the ALJ may have disagreed with the Board's interpretation, it is the *Board,* not the ALJ, to which we should be deferring, since the Board is the entity empowered to control the sale of liquor and establish pricing structures for those sales. *See* Section 207 of the Liquor Code, 47 P.S. § 2–207 (providing that the Board has the duty to control sale and fix prices of alcohol.)

Licensee seeks a ruling requiring that the Board include "all bottled beer," in addition to draft beer, as a type of alcoholic beverage subject to discounts. However, in addition to my view that the deference rule precludes the Court from doing so, I also note that limiting the interpretation of subsection (b)(2), as the Board has done, serves to restrict the scope of discounts which, in turn, serves the Liquor Code's purpose of controlling the sale of liquor so as to promote the Commonwealth's policy of "temperance and responsible conduct with respect to alcoholic beverages." Section 104(d) of the Liquor Code, 47 P.S. § 1–104(d). Thus, I believe that we should not read the regulation to include all bottled beer as a type of alcoholic beverage subject to discounts, as Licensee requests.

Licensee also asserts that the regulation is subject to more than one interpretation and is, therefore, impermissibly vague. However, the mere fact that a regulation is subject to two possible interpretations does not render it unconstitutionally vague. *See, e.g., American Booksellers Association v. Rendell,* 332 Pa.Super. 537, 481 A.2d 919, 937–38 (1984) (appealing party unsuccessfully argued that obscenity statute was unconstitutionally vague because it was subject to two possible interpretations and Court upheld statute's constitutionality).

Accordingly, because I conclude that: 1) the "lewd, immoral or improper" provision of the Liquor Code does not unconstitutionally restrain free expression and 2) the discounting regulation is not impermissibly vague, I would affirm the opinion of the trial court in its entirety.