**CAMBRIA COUNTY HOME AND HOSPITAL, Laurel Crest Manor, Petitioner**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Jan. 30, 2006.
Decided June 5, 2006.
Ordered Published Sept. 14, 2006.

Daniel K. Natirboff, Harrisburg, for petitioner.

Jason W. Manne, Sr. Asst. Counsel, Pittsburgh, for respondent.

BEFORE: McGINLEY, Judge, and FRIEDMAN, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

The Cambria County Home and Hospital, Laurel Crest Manor (LCM), petitions for review of the order of the Chief Administrative Law Judge (Chief ALJ) of the Bureau of Hearings and Appeals (BHA) of the Pennsylvania Department of Public Welfare (Department) that adopted the Recommendation of a hearing officer denying LCM's appeal from an audit report of the Office of the Auditor General (OAG) establishing LCM's allowable costs for the fiscal year ending December 31, 1992 under the Pennsylvania Medical Assistance Program (MA Program). We affirm.

LCM is a county nursing facility which participates in the MA Program.[1] In 1992, LCM changed its policy regarding the vacation pay for its full-time employees. In prior years, the full-time employees were only entitled to receive vacation pay that had been earned in the prior year, and LCM reported the cost of disbursing vacation pay on a cash basis[2], i.e., in the year

---

1. With respect to the MA Program, the Pennsylvania Supreme Court has noted:

    The program under which Appellants sought reimbursement, codified at [Section 443.1 of the Public Welfare Code, Act of June 13, 1967, P.L. 31 *as amended, added by* Section 5 of the Act of July 31, 1968, P.L. 904,] 62 P.S. § 443.1, is a joint federal-state program coordinated with, and partially funded by, the federal medical assistance program under the Social Security Act, 42 U.S.C. § 1395 *et seq.* Federal and state manuals provide the regulations which govern the program. The federal regulations are set forth at 42 C.F.R. § 447.250 *et seq.* and published as [the federal Medical Provider Reimbursement Manual, known as Health Insurance Manual–15 (HIM–15)]. Pennsylvania's regulations are set forth in the Manual of Allowable Cost Reimbursement for Skilled Nursing and Intermediate Care Facilities 2832–38 (1978), as amended by 10 Pa. Bulletin 3106 (1980) (hereinafter "the Manual") [found at 55 Pa. Code §§ 1811.201—1181.274]. The Manual is the principal authority governing the Pennsylvania Medicaid cost reimbursement program and prevails when its terms differ from those of HIM–15. 10 Pa. Bulletin 3107.

    *Suburban Manor/Highland Hall Care Center v. Department of Public Welfare*, 545 Pa. 159, 161 n. 1, 680 A.2d 867, 868 n. 1 (1996). In addition, Section 1181.231 of the Department's Manual provides:

    The Department will determine providers' allowable costs in accordance with all of the following:

    (1) Chapter 1101 (relating to general provisions), Subchapter A (relating to nursing facility care), and this subchapter.
    (2) The Medicare Provider Reimbursement Manual (HIM–15), except that where this part and the HIM–15 differ with respect to the treatment of a cost allowable in both, this part will govern.
    (3) Section 1181.68 (relating to upper limits of payment).

    55 Pa.Code § 1181.231. *See also* Section 1181.65 of the Department's regulations which provides, in pertinent part:

    (e) Allowable operating costs for a county nursing facility will be determined under the following:

    (1) The Department's *Manual for Allowable Cost Reimbursement for Skilled Nursing and Intermediate Care Facilities* is used for cost-finding.
    (2) HIM–15 will be used as a supplement to the Department's *Manual for Allowable Cost Reimbursement for Skilled Nursing and Intermediate Care Facilities* with respect to allowable costs. HIM–15 may not be construed to recognize an allowable cost which otherwise is not included or is excluded in the Department's *Manual for Allowable Cost Reimbursement for Skilled Nursing and Intermediate Care Facilities* ....

    55 Pa.Code § 1181.65(e)(1) & (2).

2. Section 1181.202 of the Department's Manual defines "cash basis" as "[a]n accounting method by which cash is recorded when it is received regardless of when it is earned and

in which it was paid and not the year in which it was earned. However, in 1992, LCM changed its policy so that the full-time employees could receive their vacation pay in the year in which it was earned. LCM also switched its accounting of this cost to an accrual basis [3], i.e., in the year in which it was earned and not when it was paid.[4]

Because LCM did not use an accrual method of accounting for this cost prior to the fiscal year ending December 31, 1992,

it does not have an accrued vacation cost report for the fiscal year ending December 31, 1991 or for any fiscal year prior to the fiscal year ending December 31, 1992. In addition, LCM did not report the cost of accrued vacation for its full-time employees in the cost report that it submitted to the Department for the fiscal year ending December 31, 1992. Likewise, LCM did not report the amount of the expense of accrued vacation in the cost report that it submitted to the Department for the fiscal year ending December 31, 1992.[5]

expenses are recorded when they are paid, regardless of when they are incurred." 55 Pa.Code § 1181.202.

3. Section 1181.202 of the Department's Manual defines "accrual basis" as "[a]n accounting method by which revenue is recorded in the period in which it is earned, regardless of when it is collected, and expenses are recorded in the period in which they are incurred, regardless of when they are paid." 55 Pa. Code § 1181.202.

4. Section 2146.2 of HIM–15 provides, in pertinent part:

2146.2 *Reimbursement for Costs of Vacation*—Vacation costs must meet all of the following conditions to be included in allowable costs:

A. These costs must be included in the cost reporting period in which they are earned by the employee and must be computed from actual payroll records as related to each employee.

B. Where the provider's vacation policy is consistent among all employees, the vacation must be taken—or, if the employee elects to be paid in lieu of taking a vacation, the payment must be made—within the period consistent with the vacation policy established by the provider. Where the policy is not consistent among all employees, the vacation must be taken—or payment in lieu of vacation must be made—within 2 years after the close of the cost reporting period in which the vacation is accrued. . . .

HIM–15 § 2146.2A, B.

In addition, Section 2146.4 of the HIM–15 provides, in pertinent part:

2146.4 *Conversion from Cash Method to Accrual Method for Vacation.*—

A. *General.*—When a provider changes its vacation cost accounting from a cash method to an accrual method, the adjustments determined to be necessary solely because of such change must be taken into account in order to prevent costs from being *duplicated* or *omitted* in computing allowable costs for the cost reporting period in which the change is effected.

Allowable costs in the year of conversion will include the accruable amount of vacation costs for all vacation earned and not paid as of the end of the year of conversion plus vacation costs paid in the year of conversion that were earned in both the year of conversion and in prior periods under Medicare. . . .

HIM–15 § 2146.4A.

5. Section 1181.45 of the Department's regulations provides, in pertinent part:

(a) In addition to the ongoing responsibilities established in Chapter 1101 (relating to general provisions), a nursing facility shall, as a condition of participation [in the MA Program]:

\* \* \*

(3) File an acceptable cost report with the Department within the time limit specified in § 1181.64 (relating to cost reporting) if the facility is continuing its participation in the MA Program. . . .

55 Pa.Code § 1181.45(a)(3).

In turn, Section 1181.64 of the Department's regulations provides, in pertinent part:

Each facility shall submit a cost report to the Department within 90 days following the close of each fiscal year as designated by the facility. . . . The report shall be prepared using the accrual basis of accounting

On August 12, 1993, Cambria County's external auditor, Maher Duessel, issued an independent auditor's report for LCM for the fiscal year ending December 31, 1992. In the report, it stated the LCM had accrued vacation costs totaling $672,000.00 for the fiscal year ending December 31, 1992 due to its conversion from cash to accrual accounting. However, the external auditor booked the accrued vacation costs as a long-term debt and not as a liquidated expense.[6]

On July 15, 1994, the OAG completed the field work for its audit of the cost report submitted by LCM for the fiscal year ending December 31, 1992.[7] The OAG's audit included a review of the independent auditor's report. On August 8, 1995, the OAG issued its audit report which made no mention of an accrued vacation cost. However, the OAG used the $672,000 accrued vacation cost for the fiscal year ending December 31, 1992 to calculate the accrued vacation expense for the fiscal year ending December 31, 1993.

On August 31, 1995, LCM appealed the OAG's audit report to the Department. More specifically, LCM appealed, *inter alia,* "[t]he failure of the Audit Report to reflect allowable unused vacation pay" and sought an adjustment to the audit report. *See* RR at 5a. Ultimately, on March 24, 2005, a hearing was conducted before the Department's hearing officer.

On June 13, 2005, the hearing officer issued a Recommendation and Adjudication in which she made the following relevant findings of fact: (1) the cost of

and must cover a fiscal period of 12 consecutive months....
55 Pa.Code § 1181.64.
In addition, Section 1181.213 of the Department's Manual provides, in pertinent part:
(b) The facility shall submit a cost report (Financial and Statistical Report, MA–11) to the Department in accordance with Departmental requirements. The cost report shall be based on financial and statistical records maintained by the facility. The cost information contained in the cost report and in the facility's records shall be current, accurate, and in sufficient detail to support the claim for cost reimbursement.
(c) The facility shall maintain adequate financial records and statistical data for proper determination of costs payable under the MA Program.... No cost will be allowed unless it is adequately documented to the extent that it is capable of being audited.
55 Pa.Code § 1181.213(b) & (c).

6. Specifically, Maher Duessel noted the following in the Fixed Assets and Long–Term Liabilities portion of the Summary of Significant Accounting Policies section of its report for the fiscal year ending December 31, 1992:
Accumulated vacation pay is accrued when incurred in the proprietary funds (using the accrual basis of accounting). Such amounts are not accrued in governmental funds (using the modified accrual basis of accounting) as the amounts are not expected to be liquidated using expendable available resources; rather the liability and a corresponding other debit are recorded in the General Long–Term Debt Account Group.
Prior to 1992, the amount of accumulated vacation was not known. In 1992, the County established a system for calculating such amounts. Accordingly, the County changed its accounting in 1992 to record accrued vacation. This change did not affect fund balance for governmental funds. For proprietary funds, after consideration of related cost reimbursement from third-parties, this change increased loss before operating transfers by approximately $135,000.
Reproduced Record (RR) at 56a–57a.

7. Section 443.1(2) of the Public Welfare Code provides, in pertinent part, that "[t]he following medical assistance payments shall be made ...: ... [t]he cost of skilled nursing and intermediate nursing care ... in county homes.... This cost in county homes shall be as specified by the regulations of the department ... *and certified to the department by the [OAG]* ...." 62 P.S. § 443.1(2) (emphasis added).

accrued vacation for LCM's full-time employees for the fiscal year ending December 31, 1992 was $672,000.00; (2) in the accrual method of accounting, the allowable accrued vacation expense is calculated by subtracting the accrued vacation cost from the prior reporting year from the accrued vacation cost for the reporting year; and (3) LCM does not have an accrued vacation cost report for the fiscal year ending December 31, 1991 or any fiscal year prior to the fiscal year ending December 31, 1992. RR at 407a.

Based on the foregoing, the hearing officer stated the following, in pertinent part:

When the [OAG] conducted its audit, it had the information from the external auditor's report and in the following fiscal year, used 1992's accrued vacation pay to compute the expense for 1993, thereby confirming the [OAG] found the $672,000 accrued vacation pay for 1992 to be correct....

There is no question that accrued vacation pay is a liability when the accrual method of accounting is used. There is no question that the expense portion of the liability is the difference between the accrued vacation pay for the reported fiscal year less the accrued vacation pay from a prior year. When the immediately prior fiscal year was also reported under the accrual accounting method, that year's accrued vacation pay is the correct figure to subtract. In this case, the accrued vacation pay figures for [the] immediately prior year, 1991, are unknown....

* * *

Whichever accounting method [LCM] used prior to FY 1992, whether cash or accrual, it was required to report costs to the Department using the accrual method. See 55 Pa.Code § 1181.64. For that reason, accrued vacation pay from FY 1991 was the proper amount to subtract from FY 1992 accrued vacation pay figure of $672,000 to compute allowable vacation pay expense for FY 1992. The allowable accrued vacation pay expense for FY 1992 cannot be computed because the accrued vacation pay expense for 1991 is unknown....

RR at 414a.

As a result, the hearing officer concluded that "[LCM] has not provided evidence to show the correct amount of accrued vacation expense for FYE December 31, 1992. Because the expense is not documented, it is not allowable as per 55 Pa. Code § 1181.213(c)." *Id.* at 415. Accordingly, the hearing officer issued the Recommendation that LCM's appeal be denied. *Id.* at 404.[8]

LCM then further appealed the hearing officer's Recommendation to the Department's BHA. On July 7, 2005, the BHA's Chief ALJ issued an order adopting the Recommendation in its entirety. LCM then filed the instant petition for review in this Court.

In this appeal, LCM claims that the BHA's Chief ALJ erred in adopting the hearing officer's Recommendation. Specifically, LCM contends that because the

---

**8.** It should also be noted that, on October 3, 1995, the Pennsylvania Office of the Budget Comptroller notified LCM of the final cost settlement for the fiscal year ending December 31, 1992 based on the OAG audit report, and demanded repayment in the amount of $124,536.40. On October 13, 1995, LCM appealed the final cost settlement to the Department, and that appeal was consolidated with LCM's appeal of the OAG audit report. As a result, the Recommendation issued by the hearing officer on June 13, 2005 directed that both appeals be denied. However, the propriety of the final cost settlement is not at issue in the present appeal.

BHA's Chief ALJ adopted as fact that LCM accrued $672,000.00 in employee vacation costs for the fiscal year 1992, and that the evidence demonstrates that this amount is attributable to the vacation expense for this period, the conclusions adopted by the Chief ALJ that LCM had insufficient documentation to prove its accrued employee vacation expense, and that it was not entitled to reimbursement for the total $672,000.00, is contrary to law, is not supported by the record, and is arbitrary and capricious.

■ We initially note that our standard of review in an appeal from an order of the Department's BHA is limited to determining whether the adjudication is supported by substantial evidence, whether the decision is in accordance with the applicable law, or whether constitutional rights were violated. *Harston Hall Nursing and Convalescent Home v. Department of Public Welfare,* 99 Pa.Cmwlth. 475, 513 A.2d 1097 (1986). It is well settled that the Department's Secretary, or the Chief ALJ as her designee, is the finder of fact in MA provider appeals. *Siemon's Lakeview Manor Estate v. Department of Public Welfare,* 703 A.2d 551 (Pa.Cmwlth.1997), *petition for allowance of appeal denied,* 556 Pa. 681, 727 A.2d 134 (1998). The finder of fact is free to judge the credibility of the witnesses and to reject contradicted or biased testimony as not credible. *Id.*

■ In addition, as the Department is the agency charged with carrying out the MA Program, its determination of what constitutes a reimbursable expense is given controlling weight unless it is plainly erroneous or inconsistent with the Department's regulations or the underlying statute. *Id.; Northwood Nursing and Convalescent Home, Inc. v. Department of Public Welfare,* 110 Pa.Cmwlth. 40, 531 A.2d 873 (1987), *petition for allowance of*

*appeal denied,* 520 Pa. 610, 553 A.2d 971 (1988); *Harston Hall.* Moreover, in the underlying proceedings, LCM had the burden of proving that the OAG's audit report was incorrect. *Siemon's Lakeview Manor Estate.* As the burdened party, LCM had both the burden of production and the burden of persuasion in this regard. *Id.*

■ As noted above, LCM did not include the accrued vacation expense in the cost report that it submitted to the Department for the fiscal year ending December 31, 1992 as required by Section 1181.64 of the Department's regulations. In fact, the accrued vacation expense did not appear until the report of the external auditor was issued on August 12, 1993. In that report, the expense did not appear as a present cost but, rather, as an unliquidated long-term liability. *See* RR at 52a, 56a–57a. Thus, it is patently disingenuous for LCM to argue before this Court that the Department erred in failing to direct reimbursement for the accrued vacation expense where, as here, the certified record demonstrates that LCM has **never** properly sought reimbursement for this expense.

To the contrary, the record in this case shows that the first instance in which LCM raised a claim regarding this expense was in its appeal to the Department in 1995 from the audit of the OAG in which it disputed "[t]he failure of the Audit Report to reflect allowable accrued unused vacation pay." RR at 5a. Clearly, the OAG did not err in this regard as it was not the responsibility of the OAG to correct LCM's failure to request reimbursement for this purportedly reimbursable expense. *See, e.g., Quincy United Methodist Home v. Department of Public Welfare,* 109 Pa.Cmwlth. 230, 530 A.2d 1026, 1029 (1987) ("Quincy contends that a DPW auditor shares the responsibility to verify a

facility's cost reports. 55 Pa.Code § 1181.74(a) provides for an audit by the DPW to verify, 'to the extent possible', that the facility has complied with applicable regulations. A facility is granted a right of appeal from any findings by an auditor under and pursuant to the terms of 55 Pa.Code § 1181.101. Read in conjunction, these two sections more readily support the Secretary's position that the ultimate responsibility to claim reimbursement for allowable costs rests with a facility, not the DPW auditors. *See also, Divine Providence Hospital v. Department of Public Welfare,* [76 Pa.Cmwlth. 188, 463 A.2d 118 (1983)], wherein this Court held

that a health care provider is charged with the knowledge of applicable regulations.").

■ In addition, in the appeal LCM initially claimed that it was only entitled to an adjustment in the amount of $47,483.00, based on the difference between a 1992 accrued vacation expense of $672,000.00 and a 1991 accrued vacation expense of $624,127.00. *See* Exhibit C–11, Attachment A at p. 2[9]; Exhibit C–12. Section 1181.101(c) of the Board's regulations provides, in pertinent part, that "[f]indings contained in a facility's audit report which are not appealed by the facility within the 30–day limit will not be considered as part of subsequent appeal proceedings." 55 Pa. Code § 1181.101(c).[10] Thus, LCM's asser-

---

9. Attachment A to Exhibit C–11 was a letter from LCM's counsel to the Department in which counsel outlined LCM's specific objections to the audit of the OAG of the cost report submitted for the fiscal year ending December 31, 1992, stating the following, in pertinent part:

> 3. *Accrued vacation pay*
> The 1992 fiscal year was the first year in which LCM's outside auditor booked accrued vacation pay. At the exit conference at the conclusion of the audit of the 1992 MA Cost Report, LCM had available the gross financial data from which the specific dollar amount of 1992 accrued vacation pay would be derived. However, LCM had not yet generated an individualized listing of employees showing the specific accrued vacation pay amounts for each employee. Reportedly, it was suggested to LCM's representatives in the course of the exit conference that the Auditor General would book LCM's accrued vacation pay if the employee-specific data were made available.
> Following the Auditor General's issuance of LCM's 1992 MA Audit Report (in August of 1995) and LCM's preservation of the issue via the filing of this appeal, LCM went to considerable effort to retrieve the personnel records that would permit the accrued pay amounts applicable to 1992 to be identified, and to calculated manually those amounts. Enclosed herewith, as "LMC 1992 Exhibit 1", are copies of those papers which comprise the detailed back-up for LCM's accrued vacation pay for 1992, which amounts to $47,873.

10. *See also* Section 1187.141 of the Department's regulations adopted in 1995 relating to appeals by "nursing facilities" for MA payments based on the Commonwealth's approved State Plan for reimbursement which provides, in pertinent part:

> (a) A nursing facility has a right to appeal and have a hearing if the nursing facility does not agree with the Department's decision regarding:
>
> * * *
>
> (2) The findings issued by the Department in a desk or field audit of the nursing facility's MA–11 cost report.
>
> * * *
>
> (d) A nursing facility's appeal shall meet the following requirements:
>
> * * *
>
> (2) A nursing facility's appeal shall state in detail the reasons why the facility believes the decision is factually or legally erroneous and the specific issues that the facility will raise in its appeal, including issues relating to the validity of Department regulations. In addition, a nursing facility appeal of findings in a desk or field audit report shall identify the specific findings that the facility believes are erroneous and the reasons why the findings are erroneous. Reasons and issues not stated in a nursing facility's appeal shall be deemed waived and will not be considered in the appeal or any subsequent related appeal, action or proceeding involving the same decision.

tion in this appeal that the Department erred in failing to direct the reimbursement for the total accrued vacation expense of $672,000.00 is patently without merit as LCM failed to properly present or preserve a claim for this expense.[11,12]

■ Moreover, even if it is assumed that LCM properly presented a claim for this expense, it is clear that the BHA's Chief ALJ did not err in adopting the hearing officer's Recommendation. It is true that the Chief ALJ did adopt the hearing officer's finding that the cost of accrued vacation for LCM's full-time employees for the fiscal year ending December 31, 1992 totaled $672,000.00. However, the Chief ALJ also adopted the hearing officer's finding that the allowable accrued vacation expense is calculated by subtracting the accrued vacation cost from the prior reporting year from the accrued vacation cost for the reporting year. In addition, the Chief ALJ adopted the hearing officer's finding that LCM does not have an accrued vacation cost report for the fiscal year ending December 31, 1991, or any prior fiscal year, with which one could determine the allowable accrued vacation for the fiscal year ending December 31, 1992. These findings are amply supported by the testimony of the senior accounting manager for Cambria County, Kristine A. Segear, *see* N.T. 3/24/05[13] at

---

Desk or field audit findings not identified in a nursing facility appeal will be deemed final and will not be subject to challenge in the appeal or any subsequent related appeal, action or proceeding involving the same desk or field audit.

(3) A nursing facility may amend its appeal in order to meet the requirements of paragraph (2). A nursing facility shall file its amended appeal within 90 days of the date of the decision appealed....

55 Pa.Code § 1187.141(a)(2), (d)(2), (3).

**11.** It is well settled that "[w]e must affirm [the Secretary's decision] if the decision is correct for any reason. Divine Providence Hospital, citing *Hankinson v. Department of Public Welfare*, [56 Pa.Cmwlth. 307, 424 A.2d 625 (1981)]." *Quincy United Methodist Home*, 530 A.2d at 1029.

**12.** In the Recommendation, the hearing officer was of the opinion that our decision in *Millcreek Manor v. Department of Public Welfare*, 796 A.2d 1020 (Pa.Cmwlth.2002) compelled consideration of LCM's entitlement to reimbursement for the total $672,000.00 accrued vacation expense. It is true that, in that case, we determined that Section 1181.101(a)(4) of the Department's regulations confers "[t]he right to a *full evidentiary hearing* before a hearing officer to contest the action [of the Department]" in compliance with the provisions of the Administrative Agency Law, 2 Pa.C.S. §§ 501—508. *Millcreek Manor*, 796 A.2d at 1028 (emphasis in original). However, we also noted that "[i]n

conducting a full evidentiary hearing, an administrative agency should determine *all of the issues which are properly before it and adequately raised." Id.* (emphasis added). As LCM's claim for reimbursement for the accrued vacation expense totaling $672,000.00 was not "adequately raised" by LCM, the hearing officer was not required to address it under our opinion in *Millcreek Manor*.

**13.** "N.T. 3/24/05" refers to the transcript of the hearing conducted before the hearing officer on March 24, 2005. At that hearing, Ms. Segear testified in pertinent part, as follows:

Q. I'd like to show you what we've previously identified as Exhibit 28. Are you familiar with that document?
A. Yes.
Q. And is that the calculation of accrued vacation for 1992?
A. Yes.

\* \* \*

Q. Are you familiar with that kind of document?
A. I'm familiar with that kind of document, yes.
Q. How did you become familiar with it?
A. When I became the accounting manager at the beginning of 2000, I was required to run a document similar to this. We run it at the end of every calendar year prior to the new year starting and you would have to run this report to determine the amount of accrued vacation an individual or a group of individuals had from the prior

51–54, and the independent auditor's report of Maher Duessel. *See* RR at 56a–57a.

In addition, these findings support the determination that LCM had failed to sustain its burden of proving its entitlement to reimbursement for the accrued vacation expense. As noted above, Section 1181.64 of the Department's regulations required LCM to submit a cost report for its accrued vacation expense for the fiscal years ending December 31, 1991 and December 31, 1992 within ninety days of the end of each of these fiscal years. Likewise, pursuant to Section 1181.213(c) of the Department's regulations, LCM was required to produce the cost report for the fiscal year ending December 31, 1991 in order to calculate the allowable accrued vacation expense for the fiscal year ending December 31, 1992. In short, the Chief ALJ did not err in affirming the hearing officer's Recommendation that LCM's appeal be denied as the record demonstrates that LCM failed to sustain its burden of proving either that the OAG's audit report was incorrect or that it was entitled to reimbursement for this accrued vacation expense.[14]

year that would be accrued and they would be taking into the current year.

Q. And so what would that amount represent with respect to the report that would be run at the end of the year?

A. It represents the amount of vacation, or the liability for that vacation, for that end of that fiscal year.

Q. Okay. And from an accounting perspective, how is that handled?

A. We would take this report for each fund. Each fund represents a different section of accounting. You would take the accrued liability number and you would compare that number to the prior year's number. For example, if this, for Laurel Crest, was $300,000 at the end of 1992, when you run this report again for the next year, example 1993, you would compare the two numbers. If it was $300,000 for 1992, $400,000 for 1993, you would then book an additional accrued liability of $100,000. And that would be an expense to that fund's books.

Q. Did you have an opportunity to look at that document and calculate the amount of accrued vacation?

A. Yes. I took this document yesterday, went through each of the cost center totals, re-added this up and verified the amount that the auditors at the time had noted that it was $672,064. There were a few sections where the cost center totals within fund 61 were not legible. So we took the individual amounts for the employees within that cost center, added them up and we tied it to that dollar amount.

\* \* \*

Q. Ms. Segear, I thought I heard you testify that the way you determine expense is you take the—I think you gave the example of '93–<94. You take the balance on, was it December 31st or January 1st of one year and compare it to the balance of accrued vacation pay on a similar day of the next year and then you subtract, and the difference is the amount of the expense?

A. For that calendar year, correct.

Q. Okay. So my understanding is the $672,000 is the balance as of January 1st, 1993?

A. 12/31/1992.

Q. 12/31/1992. So in order to determine the expense in 1992, you would have to know the identical report like this for 12/31/1991; correct?

A. Yes.

Q. Do you have such a report?

A. No. I was not with accounting at that time.

14. With respect to the costs that may be reimbursed, Section 1681(v)(1)(A) of the Social Security Act provides that "[t]he reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services...." 42 U.S.C. § 1395x(v)(1)(A).

Accordingly, the order of the BHA's Chief ALJ is affirmed.

Public Welfare, dated July 7, 2005 at Nos. 32–95–008 and 40–95–199, is AFFIRMED.

## ORDER

AND NOW, this 5th day of June, 2006, the order of the Chief Administrative Law Judge of the Bureau of Hearings and Appeals of the Pennsylvania Department of

In an attempt to clarify what costs may be reimbursed, the federal Department of Health and Human Services noted the following:

On October 9, 1991, we published a proposed rule (56 FR 50834) to revise § 413.24 [of the federal regulations] by adding a new paragraph to describe the conditions under which certain accrued costs would be recognized for purposes of Medicare payment. Our intention in specifying these conditions was not to change policy. Rather, it was to incorporate into the regulations our longstanding policy on the timely liquidation of liabilities.... Under this longstanding policy, accrued costs are included in Medicare allowable costs in the year of accrual, provided the related liabilities are liquidated timely, in accordance with the liquidation requirements for the particular type of accrued cost. If the liabilities are not liquidated timely, an adjustment is required to disallow the costs. Generally, the adjustment is made in the year of accrual except for vacation and all-inclusive paid days off, in which case the adjustment is generally made in the year in which the payment for the accrued vacation or all-inclusive paid days off should have been made.

60 FR 33126, 33127.

As a result, in 1995 the Department of Health and Human Services promulgated Section 413.100(c) of the federal regulations which provides, in pertinent part:

(c) Recognition of accrued costs.

(1) General. Although Medicare recognizes, in the year of accrual, the accrual of costs for which a provider has not actually expended funds during the current cost reporting period, for purposes of payment Medicare does not recognize the accrual of costs unless the related liabilities are liquidated timely.

(2) Requirements for liquidation of liabilities.

For accrued costs to be recognized for Medicare payment in the year of accrual, the requirements set forth below must be met with respect to the liquidation of related liabilities. If liquidation does not meet these requirements, the cost is disallowed, generally in the year of accrual, except as specified in paragraph (c)(2)(ii) of this section.

\* \* \*

(ii) Vacation pay and all-inclusive paid days off.

(A) If the provider's vacation policy, or its policy for all-inclusive paid days off, is consistent for all employees, liquidation of the liability must be made within the period provided for by that policy.

(B) If the provider's vacation policy, or its policy for all-inclusive paid days off, is not consistent for all employees, liquidation of the liability must be made within 2 years after the close of the cost reporting period in which the liability is accrued.

(C) If payment is not made within the required time period or if benefits are forfeited by the employee, an adjustment to disallow the accrued cost is made in the current period (that is, the latest year in which payment should have been made or the year in which the benefits are forfeited) rather than in the period in which the cost was accrued and claimed for Medicare payment....

42 C.F.R. § 413.100(c)(1) & (2)(ii)(A)-(C). Thus, although Section 413.100 of the federal regulations was promulgated after the relevant cost report was submitted by LCM in this case, the "longstanding policy on the timely liquidation of liabilities" was in place at the time of its submission.