# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Area Transportation Authority of | : | |
| North Central Pennsylvania, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1223 C.D. 2023 |
| | : | |
| Department of Human Services, | : | |
| Respondent | : | Argued: April 8, 2025 |

BEFORE:   HONORABLE ANNE E. COVEY, Judge
HONORABLE MATTHEW S. WOLF, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE WOLF                                                                FILED:  May 1, 2025

Before the Court is Petitioner Area Transportation Authority of North Central Pennsylvania's (Authority) petition for review of an order entered by the Department of Human Services (Department) on October 18, 2023, which affirmed an order of the Bureau of Hearings and Appeals (Bureau) entered March 6, 2023 directing the Authority to reinstate medical assistance transportation program (MATP) benefits to Benjamin Gerg (Passenger).  Upon review, we affirm.

## Background

Passenger is an Elk County resident and an approved daily participant for MATP services to and from his necessary drug and alcohol treatment at the Discovery House (Clinic) in Clearfield, Pennsylvania.  The Authority is an approved provider of MATP services for Elk County.  On April 18, 2022, Passenger went to the Clinic for treatment.  At 11:56 a.m., a staff member from the Clinic called the

Authority to report that Passenger verbalized a threat stating he was going to physically harm other passengers on the Authority's bus. Neither the Clinic nor the Authority called the police, and no criminal charges were filed against Passenger concerning the incident. Passenger was transported home on the Authority's bus that same day without incident.

At some point later that same day, the Authority issued a written notice to Passenger immediately terminating his MATP transportation benefits due to the alleged verbal threat made at the Clinic. Passenger filed an appeal of the written notice with the Bureau. The Bureau held a telephone hearing on Passenger's appeal on July 28, 2024. At the hearing, the Authority was represented by counsel. Passenger proceeded *pro se*.

The Authority called John Lacny, Director of Marketing and Communications (Director Lacny), to testify. Reproduced Record (R.R.) 99a. Director Lacny explained that part of his job is to supervise the Authority's MATP program. *Id.* He stated that on April 18, 2022, a customer service representative from the Authority received a phone call from a member of the Clinic's staff relaying that Passenger made a verbal threat against other riders on the Authority's bus. *Id.* at 107a. Director Lacny stated that the threat was specific enough that the Authority acted promptly to terminate Passenger's riding privileges. *Id.* The Authority offered into evidence an audio recording of the phone call from the Clinic to the Authority's customer service representative, and an incident report that transcribed the same. R.R. 109a. The incident report stated:

> [Passenger] told [Clinic staff] that:
>
> "He is sick and tired of riding that b[u]s and he will not ride it every day with all of those f***ing junkies" and

2

then stated that "if he has to ride that bus every day that he is going to", he said "that he is at the point that he is going to stab them all in their throats."

He was extremely irate in her office today and he just lost his cool, but I spoke to my director and clinical supervisor, and they wanted me to contact [the Authority] and let you know and give you a heads up. Probably slim chance he would do something, but Go[d] forbid something ever would happen or I just wanted it to be documented and let [the Authority] know.

R.R. 25a (Authority's Hr'g Ex. 4). The Authority also offered into evidence a second incident report, dated April 30, 2022. The report describes a separate incident involving Passenger and his former Authority bus driver. It states:

[Passenger] approached [bus driver] in the [Clinic] parking lot, while waiting for [medical assistance] passengers to return from their appointment at the [Clinic], and told [bus driver] that it was his fault for reporting [Passenger] and that was why [Passenger] was no longer permitted to ride [the Authority's] bus. [Bus driver] told [Passenger] that he never turned in an incident report on [Passenger].

[Bus driver] called Monday (5/2/22) morning and reported this to his Supervisor [].

R.R. 27a (Authority's Hr'g Ex. 5). Director Lacny explained that based on these two incidents, the Authority decided it would not modify its decision terminating Passenger's riding privileges. However, he stated that the Authority was looking for ways to work with Passenger to make sure that he could stay enrolled in his drug and alcohol treatment program. *Id.* at 114a. On cross-examination, Director Lacny stated that to his knowledge, the Authority has never received a report of Passenger behaving badly while on the bus. *Id.* at 118a.

3

Andrew Swasta, Passenger's case manager, testified on Passenger's behalf. R.R. 121a. Case Manager Swasta explained that as a case manager, he acts as a liaison to help Passenger receive the benefits he needs. *Id.* He testified that Passenger needed to attend the Clinic daily due to the very high dose of medication that he was taking. *Id.* Swasta stated that following the termination of Passenger's MATP services, he was able to secure alternate transportation for Passenger through UPMC for Life benefits, but the funding for that alternate transportation ran out. *Id.* at 121a-22a. As of the hearing, Passenger was no longer able to attend the Clinic due to transportation issues. *Id.* at 122a. As to the alleged verbal threat, Case Manager Swasta acknowledged that it was sensitive in nature but stated his belief that if the threat was severe enough, the Clinic would not have allowed Passenger to return daily for treatment. *Id.* He also noted that based on his conversations with Passenger, the threat was taken out of context. *Id.* at 122-23a. Case Manager Swasta highlighted that he has worked with Passenger for 10 years and never had any issues relating to violence, and that there have never been any reports of bad behavior while Passenger utilized transportation services, including the Authority's MATP services and UPMC's services. *Id.*

Passenger testified next. He stated that he did not make the alleged threat and believed that the Clinic reported the threat to the Authority because he planned to file a grievance regarding the Clinic's failure to provide him with a counselor. R.R. at 134a.

On March 6, 2023, the Bureau issued an adjudication and order sustaining Passenger's appeal and concluding that the Department was incorrect to terminate Passenger's MATP services. R.R. 41a. The Bureau explained that the Department's regulations permit a provider, like the Authority, to decide in their

4

professional judgment that the mode of service being provided is no longer appropriate or that the recipient's uncooperative behavior or misuse of services warrants termination. *Id.* at 36a (citing 55 Pa. Code § 2070.38).[1] Here, the Bureau found that the Authority's position relied on the alleged statements made by Passenger to Clinic staff members. However, no Clinic staff members appeared at the hearing to confirm or deny the events, or to verify the authenticity of the transcript of the phone call made to the Authority. *Id.* at 40a. While acknowledging that agencies are not formally bound by the rules of evidence,[2] the Bureau concluded that no one from the Clinic attended the hearing to verify the Clinic's position on the issue, no criminal charges were filed against Passenger, and Passenger rode the Authority's bus home following the alleged threat without incident. *Id.* Additionally, the Bureau found that Passenger argued convincingly that he did not

---

[1] Section 2070.38 provides:

> (a) The county, prime contractor, or provider who has been designated to determine eligibility shall reduce or terminate service to clients when, in its professional judgement:
>
> > (1) The client no longer needs medical transportation service or the mode of service currently being provided; or
> >
> > (2) The client's uncooperative behavior or misuse of services warrants termination.
>
> (b) Reductions and terminations based upon professional judgement shall be justified in writing on the notice of termination and redetermination which is sent to the client and placed in the client's file.

55 Pa. Code § 2070.38.

[2] 2 Pa.C.S. § 505 ("Commonwealth agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received. Reasonable examination and cross-examination shall be permitted.").

make the alleged threatening statement, and that the Authority's testimony regarding the alleged threatening statements was not credible. *Id.*

The Authority sought reconsideration of the Bureau's adjudication and order, which the Department granted by April 4, 2023 order. R.R. 80a. On October 18, 2023, the Department issued a final order upholding the Bureau's order entered March 6, 2023, for the reasons stated in the accompanying adjudication. *Id.* at 92a. The Authority petitioned this Court for review.

## Issues

On appeal,[3] the Authority raises two issues for review. First, the Authority argues its decision to terminate Passenger's MATP benefits must be afforded deference. Second, the Authority argues that the Department committed an error of law and abused its discretion by overlooking the substantial evidence of record that supported the Authority's initial termination decision.

## I.

The Authority first argues the Department's order should be reversed because Passenger posed a clear and present danger to the safety of other passengers on the Authority's buses, and the Authority was therefore required to take corrective action in furtherance of the public interest. Citing Section 2070.38 of the Department's regulations, the Authority maintains that it has the sole discretion to terminate services if a client poses a direct threat or danger to the public. In carrying out this responsibility, the Authority notes that it must exercise its discretion in accordance with federal law and regulations. Pursuant to 49 U.S.C. § 5329, the

---

[3] Our standard of review is limited to determining whether the adjudication is supported by substantial evidence, whether the decision is in accordance with the applicable law, or whether constitutional rights were violated. *Cambria County Home and Hosp. v. Dep't of Pub. Welfare*, 907 A.2d 661, 667 (Pa. Cmwlth. 2006).

Authority submits that public transportation agencies must establish comprehensive agency safety plans, that include "strategies to minimize the exposure of the public, personnel, and property to hazards and unsafe conditions . . . ." Moreover, regarding transportation for services for individuals covered by the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213, the Authority is empowered to refuse service to someone who "engages in violent, seriously disruptive, or illegal conduct, or represents a direct threat to the health or safety of others." 49 C.F.R. § 37.5(h). Here, the Authority argues it was in the best position to determine the safety needs of its drivers and passengers. Accordingly, the Authority maintains that its determination that Passenger posed a threat to others deserved deference from the Bureau and the Department.

The Department responds that while the Authority is granted discretion to terminate or reduce riding privileges pursuant to 55 Pa. Code § 2070.38, that discretion is not insulated from appellate review under state or federal law. Indeed, the Department's regulations and the federal statutes and regulations all provide for appeal rights and procedures. *See generally* 55 Pa. Code, Chapter 275; 42 U.S.C. 1396(a)(3); and 42 C.F.R. Part 431, Subpart E. Therefore, the discretion afforded the Authority is not unlimited. Here, through that exact appellate review process afforded by law, the Department found that the Authority failed to provide sufficient relevant probative evidence to terminate Passenger's MATP privileges.

We agree with the Department. While 55 Pa. Code § 2070.38 allows the Authority to reduce or terminate riding privileges "based upon professional judgment," that judgment is not without limits. Here, the Authority had the opportunity to justify its professional judgment before the Bureau at the hearing. The Bureau found that the Authority fell short of proving that a termination of

7

Passenger's MATP privileges was warranted. Aside from the language of 55 Pa. Code § 2070.38, which is subject to appeal procedures, 55 Pa. Code, Chapter 275, the Authority cites no precedent or other authority for its contention that its initial decision to terminate benefits should be afforded great deference, or any deference at all. Accordingly, we reject the Authority's argument on this issue.

## II.

The Authority next avers that the Bureau improperly overlooked substantial evidence to justify the termination of Passenger's MATP privileges and advances several arguments in support. At the outset, the Authority generally argues that it offered an audio recording and corresponding incident report transcribing Passenger's verbal threat against the Authority's passengers, and a second incident report documenting a subsequent encounter between Passenger and his former MATP bus driver, which the Authority characterizes as intimidating. The Authority submits that despite accepting this evidence, the Bureau ultimately found that Passenger did not make the alleged threat. Thus, it argues the Bureau's decision is "contrary to all logic and [was issued] despite a lack of any admissible contrary evidence." Authority's Br. at 15.

Specifically, regarding the audio recording of the phone call from the Clinic to the Authority and the corresponding transcript, the Authority argues the Bureau appears to have misapplied the hearsay rules that relate to unobjected to out of court statements in the context of administrative proceedings. The Authority argues that it is widely recognized that administrative agencies like the Bureau are not bound by the technical rules of evidence and that evidence may be considered if of reasonable probative value. Specifically, this Court has held that hearsay evidence, if admitted without objection, may support a finding in an administrative

8

proceeding provided it is corroborated by other competent evidence in the record. Authority's Br. at 15-16 (*citing Bracy v. Unemployment Comp. Bd. of Review*, 382 A.2d 1295, 1297 (Pa. Cmwlth. 1978)). The Authority asserts that the audio recording of the Clinic's phone call to the Authority was corroborated by Passenger's own testimony admitting he was in a state of discontent over his interactions with Clinic staff on the day at issue. In violation of this principle, the Authority argues the Bureau disregarded the audio recording and corresponding transcript just because the persons directly involved did not testify.

Finally, the Authority notes that the Bureau decided to credit Passenger's testimony over Director Lacny's. However, the hearing was conducted over telephone, and the administrative law judge who presided over the telephone hearing was not the same administrative law judge that issued the adjudication. For these reasons, the Authority maintains that no deference should be given to the Bureau's credibility determinations.

The Department responds that the Bureau's decision was supported by substantial evidence, and that it did not abuse its discretion or commit an error of law in so affirming. In response to the Authority's claim that the Bureau misapplied the rules regarding hearsay evidence, the Department agrees that the Authority has identified the correct hearsay standard for administrative proceedings. However, the Department argues that while the Bureau "may" consider that evidence, it is not required to credit it. Here, the Bureau properly accepted and considered the Authority's hearsay evidence but found the lack of supporting testimony from Clinic staff, Authority staff, or the bus driver – each of whom would have had firsthand knowledge of the incident – rendered it not as credible as Passenger's firsthand account of the incident. To the extent the Authority asserts that Passenger

9

corroborated the recording of the call and corresponding transcript, it maintains that is a misstatement of his testimony, wherein Passenger specifically denied making such threat. Last, the Department notes that the Authority cites precisely no support for its claim that the Bureau's credibility determinations are not entitled to deference simply because different ALJs presided over the hearing and issued the adjudication.

We address each of the Authority's challenges in turn. First, we recognize that the parties correctly acknowledge that administrative agencies, like the Bureau, are not bound by the technical rules of evidence at agency hearings. *A.Y. v. Dep't of Pub. Welfare, Allegheny Cnty. Child. & Youth Servs.*, 641 A.2d 1148, 1150 (Pa. 1994). In the context of agency proceedings, we have consistently applied the following standard, commonly referred to as the *Walker* Rule, to determine when hearsay evidence may be admitted:

> Hearsay evidence, [a]dmitted without objection, will be given its natural probative effect and may support a finding of [an agency], [i]f it is corroborated by any competent evidence in the record, but a finding of fact based [s]olely on hearsay will not stand.

*Rox Coal v. Workers' Comp. Appeal Bd. (Snizaski),* 807 A.2d 906, 915 (Pa. 2002) (*citing Walker v. Unemployment Comp. Bd. of Review*, 367 A.2d 366, 370 (Pa. Cmwlth. 1976)). Here, the Bureau's decision cites the *Walker* Rule and acknowledges that Passenger did not object to the Department's audio recording or incident report transcribing said recording. R.R. at 39-40. In its analysis, the Bureau noted that "no one from the [C]linic attended the hearing to authenticate the recording or verify their position on the issue. . . . In addition, [Passenger] argued convincingly that he did not make the alleged statements." *Id.* at 40a. While the Authority frames this as a misapplication of the *Walker* Rule, said rule does not

10

*require* an agency to give any amount of probative effect to evidence admitted thereunder. Here, the Bureau accepted and considered the audio recording and corresponding transcript thereof and found that evidence less probative than Passenger's direct testimony produced at the hearing. The Bureau is the ultimate fact-finder, and determinations as to credibility and evidentiary weight will not be disturbed on appeal absent an abuse of discretion. *F.V.C. v. Dep't of Pub. Welfare*, 987 A.2d 223, 228 (Pa. Cmwlth. 2010). Here, we find no abuse of discretion and therefore decline to disturb the weight assigned to the evidence.

We likewise reject the Authority's contention that the Bureau's credibility determinations deserve no deference because the ALJ that presided over the hearing was not the same ALJ that issued the March 6, 2023 adjudication. This issue is well settled. In *Casne v. Workers' Compensation Appeal Board (Stat Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008), we explained that "even where [the factfinder] has based a credibility determination on a cold record, substantial deference is due." *See also Carbon Cnty Child. & Youth Servs. v. Dep't of Pub. Welfare* (Pa. Cmwlth., No. 533 C.D. 2014, filed October 19, 2015) (explaining that an ALJ who did not observe testimony may make credibility determinations so long as they are explained), *P.N. v. Dep't of Hum. Servs.* (Pa. Cmwlth., No. 302 C.D. 2020, filed April 27, 2021) (same). Accordingly, the Authority's argument regarding the Bureau's credibility determinations is without merit.

## Conclusion

For the reasons articulated above, we affirm the Department's October 18, 2023 final order reinstating Passenger's MATP privileges.

_____
MATTHEW S. WOLF, Judge

11

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Area Transportation Authority of :
North Central Pennsylvania, :
                    Petitioner :
                             :
          v. : No. 1223 C.D. 2023
                             :
Department of Human Services, :
                    Respondent :

# **O R D E R**

AND NOW, this 1st day of May 2025, the order entered by the Department of Human Services on October 18, 2023 is AFFIRMED.

_____
MATTHEW S. WOLF, Judge